NOT DESIGNATED FOR PUBLICATION

No. 119,429

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

MARY PAT SCHULTZ,
*Appellee*,

and

MARK SCHULTZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; PAUL C. GURNEY, judge. Opinion filed October 11, 2019. Affirmed.

*Joseph W. Booth*, of Lenexa, for appellant.

*Christopher J. Sherman* and *David K. Martin*, of Payne & Jones, Chartered, of Overland Park, for appellee.

Before HILL, P.J., LEBEN, J., and WALKER, S.J.

PER CURIAM: Mary and Mark Schultz each petitioned for divorce in 2016. Mark was imprisoned, and his attorney withdrew before the pretrial conference. Mark did not appear in person or through counsel at the pretrial conference. After the pretrial conference, the trial court ordered that Mark could submit a pretrial questionnaire and an affidavit before the "final hearing." Mark submitted the pretrial questionnaire and an unsworn net worth statement before the final hearing, but because of an error in the court clerk's office, the trial court incorrectly thought Mark failed to file anything. Neither

1

Mark nor an attorney representing him appeared at the final hearing. After hearing testimony and receiving evidence from Mary, the trial court entered a divorce decree dividing the couple's assets. Mark moved to set aside the judgment on multiple grounds. At a hearing where both parties were represented, the trial court denied this motion. Mark has appealed from this denial, but we are satisfied that the trial court's orders should be upheld.

FACTS

Mark and Mary Schultz married in 1986. On May 2, 2016, Mary petitioned for a divorce. On June 1, 2016, Mark counter-petitioned for divorce. On September 8, 2016, the trial court entered temporary orders.

The financial history of the marriage, particularly in its latter years, is a long, sad and tangled tale. In February 2017, Mark pleaded guilty to a federal charge of conspiracy to commit mail and wire fraud in a federal criminal case. The charges stemmed from Mark's law firm's failure to give a client over one million dollars collected on the client's behalf.

During a March 10, 2017 status conference, the trial court set a pretrial conference date of November 29, 2017. After a June 2017 hearing the trial court modified the temporary orders on November 3, 2017, lessening Mark's financial obligations.

In July 2017, Mark was sentenced to one year and one day in prison in his criminal case. See, e.g., Press Release, United States Attorney's Office for the Western District of Missouri, Attorney Sentenced for Fraud Conspiracy That Stole $1.2 Million from St. Luke's (July 7, 2017), 2017 WL 2892246, https://www.justice.gov/usao-wdmo/pr/attorney-sentenced-fraud-conspiracy-stole-12-million-st-lukes. On November 6, 2017, the trial court permitted Mark's counsel to withdraw from the case. A copy of the

order permitting withdrawal was mailed to Mark; it notified him that the pretrial conference was still scheduled for November 29, 2017.

On the morning of the pretrial conference, Mark filed a letter with the trial court stating that he had "no other choice but to represent [himself]." Mark also asked the court to continue the pretrial conference until after his scheduled release date in September 2018. Mark did not appear in person or through counsel at the pretrial conference.

At the pretrial conference, Mary asked the trial court to enter a default judgment against Mark; the trial court denied her request. The trial court denied Mark's request to continue the trial until he was out of prison; it scheduled a final hearing for December 21, 2017. The trial court noted that "[a]ssuming Mr. Schultz cannot attend and does not retain counsel . . . at a minimum, he should be afforded the opportunity to submit something to the Court through affidavit." The trial court ordered that Mark had "until December 18, 2017 to file with the Court and complete delivery to Petitioner's attorney the following: a. Respondent's Affidavit setting forth his factual contentions; and b. Respondent's Domestic Relations Pretrial Questionnaire."

Mark gave a completed pretrial questionnaire and an unsworn preliminary net worth statement to a friend to file with the court. The friend fax-filed the documents with the trial court on December 18; the clerk's office file-stamped these documents on the same day but failed to add them to the case file.

The trial court held the final hearing on December 21, 2017. Mary appeared in person and through counsel; Mark did not appear in person or through counsel. Because Mark's fax-filed documents were erroneously left out of the case file, the trial judge stated that "I have not seen that any such document has been filed with the Court by Mr. Schultz, and that was to have occurred by December 18th, as well as a pretrial questionnaire."

3

The hearing proceeded as scheduled, and Mary testified in her own behalf. She used "Petitioner's Exhibit 2," a notebook she compiled with her attorney containing information about the couple's assets, liabilities, and incomes as of May 2016. Mary testified about the appraised value of the couple's house, the couple's equity in the home, the value of the couple's retirement accounts, and her personal savings account. She also described personal property like their cars and household goods. She testified that when Mark moved out of the couple's home he took some household goods with him and bought new furnishings for his new place. Mary said she wanted to keep the property in the couple's home and have Mark allocated the property he had already taken and purchased after moving.

With respect to Mark's law practices, Mary testified that Mark owned in full or in part several different entities including Gallas & Schultz, "an LLC and a general partnership," a separate law practice referred to as "Mark Schultz . . . Law Practice," another entity called "Fulcher & Schultz," and one called "G&S Trustee Corporation." Mary said that she and her attorney were never able to get a clear understanding of the financial details of the various entities.

Mary testified that one of the most contentious issues in the divorce was the accounts receivable from Gallas & Schultz. She said that Mark had previously told her that the accounts receivable were "almost his safety net" that could pay his salary for several years even if he did no more work. She testified that while Mark's interrogatories stated the accounts receivable were $586,298, he had told her that the true "net value" of those accounts were only $164,017. Mary disagreed with this low estimate and believed the "net value" of the accounts was significantly higher than $164,017. Mary testified that she originally believed Mark's large accounts receivable should result in her receiving an equalization payment from Mark. But Mary indicated she had now decided that, because of Mark's prison sentence and the difficulty in valuing the business entities, she was no longer asking the trial court for an equalization payment.

4

Mary provided evidence that the couple's tax returns showed Mark's annual income was as follows: $225,000 in 2009; $216,000 in 2010; $258,600 in 2011; $195,800 in 2012; and $209,000 in 2013. She said that, given the fallout from the criminal convictions of Mark and his law partner, Gallas, and the couple's divorce "it [was] difficult to get an exact handle on [Mark's] income" in more recent years. She said that she made about $90,000 annually. Mary contended that, given Mark's income and her income as well as the length of their marriage, under the Johnson County guidelines she normally should be entitled to $275,000 in spousal support over the next 10 years. But because of the "change of circumstances that have occurred during this case" Mary announced she had decided to waive any claim to future spousal maintenance. She asked the trial court to take this waiver into account when dividing the couple's assets. She also said she incurred over $50,000 in legal fees but was willing to waive her request for fees.

After her testimony was concluded, Mary's counsel failed to admit the notebook, Petitioner's Exhibit 2, as evidence. After her testimony, Mary's attorney summarized her request, and the trial court granted Mary's proposed resolution of their financial matters. On December 22, 2017, the trial court granted the couple a divorce and ruled as follows:

- Mary received the couple's house
- Mary received her retirement accounts
- Mark received his retirement accounts
- Mary received all bank accounts in her name
- Mark received all bank accounts in his name
- Mary and Mark received their respective cars
- Mary and Mark were to keep the household property and personal property at that time in their possession
- Mark received "all interest in Gallas & Schultz, LLC, Gallas & Schultz General Partnership, Mark Schultz Law Practice, Fulker & Schultz, LLC, and

5

G&S Trustee Corporation including accounts receivables, furniture and equipment."

- Mary and Mark were responsible for their own attorney fees
- Neither party received spousal maintenance.

On January 17, 2018, Mark moved to set aside the divorce decree under K.S.A. 2018 Supp. 60-260. He argued that under K.S.A. 2018 Supp. 60-259(a)(1)(E), the trial court should set aside the divorce decree on the grounds of newly discovered evidence. He also argued that the decree should be set aside under K.S.A. 2018 Supp. 60-260(b)(1) for mistake, inadvertence, surprise, or excusable neglect and K.S.A. 2018 Supp. 60-260(b)(6) for "any other reason that justifies relief."

Mary opposed Mark's motion to set aside the decree. The trial court held a hearing on the motion on March 19, 2018. Mary appeared in person and through counsel; Mark appeared through counsel.

Mark's primary argument was that the decree should be set aside as unjust because the trial court did not consider the two documents he filed on December 18, 2017. As noted, the court had specifically ordered that Mark had until December 18, 2017, to file with the court and complete delivery to Mary's attorney his affidavit setting forth his factual contentions and his domestic relations pretrial questionnaire. The trial court noted that while Mark filed a pretrial questionnaire as ordered, his preliminary net worth statement was a "single page document unsigned, not verified, not in an affidavit form." The trial court judge stated that

"neither of [the documents Mark filed] are attested to or in any type of affidavit form. So by themselves they appear to be unsubstantiated documents.

"If they were available, the Court clearly would have looked at them, but in terms of the evidence that was presented, they would not have served as a basis to undercut the

substantial evidence that was provided at the hearing, both documents and testimony in this case."

The trial court held that the documents were not newly discovered evidence so as to permit a new trial. The court also rejected Mark's characterization of its ruling as a "default judgment," stating that it heard and considered evidence that served as the basis of the divorce ruling. The trial court denied Mark's motion to set aside, alter, or amend the divorce decree.

Mark has timely appealed from the denial of his motion to set the divorce decree aside.

ANALYSIS

*Was it error to deny Mark a new trial?*

On appeal, Mark first argues that the trial court erred by denying his motion to set aside the divorce decree under K.S.A. 2018 Supp. 60-259(a)(1)(E). K.S.A. 2018 Supp. 60-259(a)(1)(E) provides: "The court may, on motion, grant a new trial to all or any of the parties and on all or part of the issues for the following reasons: . . . (E) newly discovered evidence that is material for the moving party which it could not, with reasonable diligence, have discovered and produced at trial."

We review a trial court's ruling on a motion for a new trial for abuse of discretion. *Miller v. Johnson*, 295 Kan. 636, 684, 289 P.3d 1098 (2012). A trial court abuses its discretion if it bases its decision on an error of fact or law, or if no reasonable person would agree with the court's decision. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

Mark's primary contention here is that the trial court abused its discretion by failing to grant a new trial because it erroneously did not consider the pretrial questionnaire and unsworn net worth statement he submitted on December 18, 2017. Mark argues that "[c]learly, when the court proceeded to trial, the basis for that decision, more than any other consideration, was the fact that Mark had not filed the Pretrial Questionnaire." He goes on to argue that "[o]nly later at the March 19, 2018 hearing did the court state that with or without the pretrial questionnaire and affidavit it intended to proceed on that December day." Mark continues by contending "[i]t is one thing to use one's discretion and make a decision, but it is another to take a revisionist approach and rule initially that Mark's failure to comply and proffer the documents was the basis for proceeding, only later to change the standard." Thus, he concludes:  "When confronted with the fact that Mark did comply, or complied substantially, with the opportunity, then the very basis for proceeding [with the trial on December 21, 2017] is gone."

Under abuse of discretion review, we do not reweigh evidence or assess witness credibility. *State v. Woodring*, 309 Kan. 379, 380, 435 P.3d 54 (2019). Additionally, it is Mark's burden as the party arguing that the trial court abused its discretion to show that the trial court indeed abused its discretion. See *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011).

In our view, the record does not support Mark's claim that the primary reason the trial court proceeded to trial was because it did not have his documents. Instead, the record shows that Mark received a copy of the pretrial conference order, which stated:

"2. Respondent is granted until December 18, 2017 to file with the Court and complete delivery to Petitioner's attorney the following:
  a. Respondent's Affidavit setting forth his factual contentions; and
  b. Respondent's Domestic Relations Pretrial Questionnaire.
"3. The Court sets this matter for final hearing on December 21, 2017 at 3:00 p.m.

8

"4. If, upon receipt of Respondent's Affidavit and Domestic Relations Pretrial Questionnaire, Petitioner believes additional time is required to respond to Respondent's Affidavit and Domestic Relations Pretrial Questionnaire, Petitioner shall notify the Court and the Court will consider Petitioner's request for a continuance of the date of the final hearing scheduled December 21, 2017."

This order makes clear that the trial court set the "final hearing" for December 21, 2017, and envisioned only one scenario where it would delay the hearing: if Mark submitted an affidavit and/or his pretrial questionnaire and Mary requested a continuance to respond to the affidavit or questionnaire. Thus, the record does not support Mark's contention that the trial court proceeded to trial on December 21, 2017, primarily because it did not have his documents and that, since the court was wrong about not having his documents, it therefore had no reason to proceed on December 21, 2017.

Mary correctly argues that here, Mark is attempting "to insert a square peg into a round hole." Mark's effort to characterize the trial court's erroneous failure to consider the documents as "newly discovered evidence" is not supported by our caselaw.

"When determining whether a new trial is warranted on the basis of newly discovered evidence, the court considers whether: (1) 'the new evidence could not, with reasonable diligence, have been produced a trial,' and (2) 'the evidence is of such materiality that it would be likely to produce a different result upon retrial.' [Citation omitted.]" *State v. Warren*, 302 Kan. 601, 615, 356 P.3d 396 (2015).

Mary points out that the trial court correctly found that the documents at issue here were not sworn or attested to; they are therefore "unsubstantiated statements, and do not constitute admissible evidence for trial." Thus, the court clearly indicated that the documents were not "of such materiality that it would be likely to produce a different result upon retrial" and therefore did not warrant a new trial. See *Warren*, 302 Kan. at 615. Indeed, the trial court stated that the documents "would not have served as a basis to

9

undercut the substantial evidence that was provided at the hearing, both documents and testimony in this case."

A reasonable person could agree with the trial court's conclusion that Mark's five pages of unsworn documents would not have produced a different result at trial given Mary's sworn testimony and supporting documentation. Mark has therefore failed to show that the trial court abused its discretion by making an error of fact or law or reaching an unreasonable conclusion. Because of this, we find no error in the court's decision to deny Mark a new trial.

*Did the trial court err by refusing to set aside the divorce decree as a default judgment?*

In his second attack on the divorce decree, Mark argues that though the trial court denied Mary's request for a default judgment at the pretrial conference, its December 22, 2017 decree was in reality a default judgment for Mary. Following up, he then contends that the trial court erred by not setting aside this "default judgment" for excusable neglect.

We once again apply an abuse of discretion review to a trial court's ruling on a motion for relief from a default judgment. *Garcia v. Ball*, 303 Kan. 560, 565-66, 363 P.3d 399 (2015). We review a court's findings of fact underlying a ruling for substantial competent evidence. Substantial competent evidence is "such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion." *LSF Franchise REO I v. Emporia Restaurants, Inc.*, 283 Kan. 13, 19, 152 P.3d 34 (2007). We exercise unlimited review over a trial court's conclusions of law. 283 Kan. at 19.

Our first point of focus must be on whether the December 21, 2017 divorce decree was, in actuality, a default judgment granted to Mary.

Mark provides no authority to support his claim that the December 21, 2017 hearing was a "default hearing." Instead, he takes issue with Mary's testimony, saying her approach to valuing the couple's assets "made little sense" because she "decide[d] to rely on some of Mark's statements but not others and pick[ed] to her benefit the face value of the receivables."

Mark also argues that a "valuation date should have been set in a pretrial order, and the court should have considered the changes in value[.] *In [re] Marriage of Cray*, 254 Kan. 376, 385-86, 867 P.2d 291, 299 (1994)." But the portion of *In re Marriage of Cray* he cites does not state that a trial court *must* set a valuation date or that it should have considered changes in value between the separation date and the date of the divorce decree; nor does it state that the trial court's failure to do so makes the divorce decree a "default judgment." To the contrary, the cited portion of *In re Marriage of Cray* describes a trial court's wide latitude during valuation, and states that "[e]ach divorce case is different, and we believe the longstanding rule which affords the trial court broad discretion in determining the date to value marital assets is the appropriate one." *In re Marriage of Cray*, 254 Kan. at 386.

In response, Mary argues the trial court correctly ruled that the December 21, 2017 decree was not a default judgment. "The law disfavors default judgments, especially in matters involving large sums of money." *Garcia*, 303 Kan. 560, Syl. ¶ 3. Nevertheless, Kansas law, as outlined in K.S.A. 2018 Supp. 60-255, permits the entry of default judgment in certain circumstances.

> "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, the party is in default. On request and a showing that a party is entitled to a default judgment, the court must render judgment against the party in default for the remedy to which the requesting party is entitled. . . . If the party against whom a default judgment is sought has appeared personally, or by a representative, that

party or its representative must be served with written notice of the request for judgment at least seven days before the hearing." K.S.A. 2018 Supp. 60-255(a).

Problematically, our Kansas law does not explicitly define "default judgment." But The Restatement (Second) of Judgments helpfully explains the contours of default judgment:

"The term 'default judgment' has been applied to a range of situations in which judgment was rendered without plenary adjudication of issues on which judgment might rest. At one end of the range, the defaulting party makes no appearance at all in the original action. The first indication of contest arises later, sometimes years later, when the judgment becomes significant in subsequent events, for example in regard to the title to property. *At the other end of the range of 'defaults,' the defaulting party has appeared in the action and offered contest but then, perhaps as late as trial itself, disengaged and suffered judgment to be entered. In this latter kind of situation, the default judgment may have been entered as a sanction for noncompliance with a court order, sometimes signifying not the absence of contest but an embittered dispute over the regularity of the proceedings. Such a judgment is substantially similar to a judgment upon a contested action.*" (Emphasis added.) Restatement (Second) of Judgments, ch. 5, topic 1, title A, intro. note (1982).

Here, it is undisputed that Mark appeared in the case, originally through his counsel Mark Hannah. After Hannah withdrew, Mark opted to continue pro se in the case. Mark did not appear in person after July 2017 because he was in prison, but he filed a letter with the trial court after Hannah withdrew. Notably, Mark was more knowledgeable about courts and legal procedure than most pro se litigants: he was an attorney until he was disbarred after voluntarily surrendering his license to practice law in May 2017. See *In re Schultz*, 306 Kan. 512, 395 P.3d 403 (2017).

Mark claims that the trial court scheduled the December 21, 2017 hearing "to cure the premature status of the eventual default finding." But this critique of the trial court's

motives is not supported by the record. As we have noted, at the pretrial conference, Mary moved for default judgment on the grounds that Mark did not appear, personally or through counsel, at the pretrial conference hearing. But instead the trial court denied her request and the judge stated:

> "Okay. Mr. Martin [Mary's attorney], as—as far as your request for a default judgment, the Court will deny that request, for the following reasons.
>
> "Number one, I think I do need to consider the circumstances. So, if there's a willful lack of appearance, that's one thing. I think, under the circumstances, Mr. Schultz is not able to be here.
>
> "Now, I agree with you, in the sense that it is at the eleventh hour that he advised the Court, as well as you, that he was not going to be here.
>
> "That probably would have been known and expected by the Court, given his circumstances, as well by you.
>
> "He was to have submitted a—actually, the parties were to submit an agreed-upon pretrial order. I didn't get that.
>
> "My review of the statute, as far as a default judgment for failure to appear at the pretrial conference or any other hearings set by the Court, there's a provision that a party has notice of the hearing or an opportunity to be heard on that.
>
> "So, I've looked at that before in several instances where I think someone's absence has frustrated the process.
>
> "But I believe, as the statute has set out, they are to be afforded an opportunity to explain why default should not be entered.
>
> "So, I think, in terms of the context of where we stand today, it's premature. What I think we need to do, is—is as follows."

The judge went on to say that "we'll need to set a date for a final hearing." Continuing, the judge stated that "[a]ssuming Mr. Schultz cannot attend and does not retain counsel. He is not able to retain counsel, then, I think, at a minimum, he should be afforded the opportunity to submit something to the Court through affidavit." The judge said it would give Mark 21 days to submit an affidavit and a pretrial questionnaire, and if

13

Mark submitted those documents, then Mary could decide if she wanted to bring in a valuation expert before the "final hearing."

The trial court's written order following the pretrial conference clearly states that Mary's request for the entry of default judgment was denied. By its express language the order gave Mark until December 18, 2017, to file a pretrial questionnaire and an affidavit, and "set[] this matter for final hearing on December 21, 2017." Mark received notice of the final hearing and timely submitted the pretrial questionnaire and an unsworn net worth statement. He did not submit any other affidavits prior to the final hearing.

Importantly, Mary never renewed her motion for default judgment, and the trial court treated the December 21, 2017 proceeding as an evidentiary hearing, not a mechanical grant of default judgment based upon Mark's failure to appear or present evidence. Although the trial court incorrectly believed Mark did not submit a pretrial questionnaire before the final hearing, it also did not know he submitted the unsworn net worth statement. On December 21, 2017, the trial court heard 26 pages' worth of testimony and argument from Mary before ruling. This contradicts Mark's unsupported assertion on appeal that the December 21, 2017 hearing lasted "but a few minutes."

During the March 2018 hearing on Mark's motion to set aside the decree, Mark's new attorney, Joseph Booth, argued that "the crux of Mr. Schultz's plea" for relief from the decree was that Mark did not understand the December 21, 2017 final hearing was a trial. The trial court judge responded that "I don't believe that this was a default situation. Evidence was presented. Evidence was considered by the Court. It served as the basis for the determination made by the Court."

Under the totality of these circumstances, particularly given the fact that Mark was formally notified that the "final hearing" was set for December 21, 2017, and was given the deadline of December 18 to submit evidentiary materials for the trial court's

14

consideration, we conclude that it is unreasonable to characterize that hearing as a default judgment under our law.

*Mark's additional arguments to set aside the trial court's judgment.*

Mark makes several additional arguments as to why the trial court's decree of divorce and other final orders arising from the December 21, 2017 final hearing should be set aside. These contentions are all predicated on his previous argument that the true result of the hearing was to grant Mary a default judgment. Since we have rejected Mark's contention on that issue, we could arguably treat the balance of his issues on appeal as moot. But we are convinced that these additional contentions lack merit even if, for purposes of discussion, we characterize the trial court's ruling at the final hearing as a default judgment in favor of Mary. Therefore, in the interest of completeness in addressing Mark's complaints on appeal, we have chosen to consider those issues directly.

In reviewing Mark's complaints and determining if the trial court abused its discretion by denying his motion to set aside the judgment, we note that his arguments have shifted during the case. We will identify the sections of the code of civil procedure he has invoked to support his motion one-by-one and address his arguments under each section.

*K.S.A. 2018 Supp. 60-260(b)*

On January 17, 2018, Mark moved to set aside the divorce decree, which he claimed was a default judgment, under K.S.A. 2018 Supp. 60-259 (the request for a new trial which we discussed in considering his first issue on appeal) as well as K.S.A. 2018 Supp. 60-260(b)(1) and (6). The relevant portions of K.S.A. 2018 Supp. 60-260 provide:

15

"(b) *Grounds for relief from a final judgment, order or proceeding.* On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order or proceeding for the following reasons:

(1) Mistake, inadvertence, surprise or excusable neglect;

. . . .

(6) any other reason that justifies relief."

With respect to excusable neglect, K.S.A. 2018 Supp. 60-260(b)(1), Mark argued in his motion that "he personally did all that he could, but either a mistake happened by a currently unknown individual, or whatever neglect exists in the eyes of any critic, was excusable under these circumstances." He also asserted that the unsworn net worth statement and pretrial questionnaire were "diligently prepared" and served on opposing counsel and the court and "[h]ad those documents been provided, the court would have proceeded with a full evaluation of the evidence and found an equitable result." Thus, Mark's only argument in his written motion appeared to be that had the court considered his two documents, it would not have entered a default judgment against him.

During the hearing on Mark's motion to set aside the judgment, Mark's attorney, Joseph Booth, changed tack and argued that "the crux of" Mark's request for relief was that

"[w]hatever the expectations there were, his were that there would then be conversation on when to set a trial, whether or not there would be experts. In other words, another step in the process.

"So the difference in perception or however you want to phrase that is that he was not expecting that if he were to provide these two documents, that the matter would just immediately proceed to trial at that next hearing."

But the trial court explicitly rejected both of these lines of argument. It found that "mistake, inadvertence, surprise or excusable neglect" did not apply because:

16

"No affidavit was submitted. Even though the one that was filed didn't reach the Court, the one that was filed was not an affidavit attested to. It was not the type of evidence that would have been—would have been served to challenge the evidence presented by the petitioner in this case."

The trial court also held that Mark's purported "mistaken" belief that the December 21, 2017 "final hearing" was not a trial was not reasonable. With respect to Mark's purported assumption, the trial court stated:

"Well, that was probably something that he shouldn't have done, because again, that is not his decision to make. . . . The Court doesn't just open these proceedings up and say I am going to wait until everybody decides by agreement of how they want to proceed.

. . . .

"But to suggest that with the pretrial conference having been scheduled back, I believe, in March of 2017 and everybody was aware of the fact that that is when we were going to proceed and all of discovery was to be completed back in July of 2017 and these things were well-known by everybody, so for Mr. Schultz not to file a motion to continue several weeks or a month before the pretrial conference and at least get that before the Court and Mr. Martin [Mary's attorney] having an opportunity to address it—but to say on the morning of the conference, hey, please give me more time and I would like the Court to extend a trial date or the pretrial date in this instance until September of 2018 upon a time of my expected release, again, that was very late in the game to expect that by doing something like that, whether it is a pro se litigant or an attorney—I think that is ignoring what the Court had on the books for a long time and ignoring the rights of the other parties in this case."

Later, discussing whether notification of the final hearing had been properly conveyed to Mark, the trial court noted:

"So after that pretrial conference, a journal entry was entered. Mr. Martin forwarded a copy of that journal entry as far as the various things detailed in the pretrial

17

conference including an opportunity for respondent to submit an affidavit as well as the pretrial questionnaire. That was forwarded the day after the pretrial conference to both respondent as well as, I believe, his sister so that at least communication was to be received by him so he knew what opportunities were available for him when this case was set to proceed to trial on December 21, 2017."

The trial court also highlighted that despite receiving the order saying he could submit an affidavit, Mark failed to do so.

On appeal, Mark takes yet a different tack. He no longer argues that the trial court's divorce decree would have been different had it only considered his two filed documents or that he "mistakenly" though the December 21, 2017 final hearing was not a trial date. Instead, he now argues that the trial court's overall course of action, from the pretrial conference to the refusal to set aside the decree, was unfair. In his appellate brief, Mark identifies only K.S.A. 2018 Supp. 60-260(b)(1), "[m]istake, inadvertence, surprise or excusable neglect," as the grounds he sought for relief below. Nevertheless, Mark's emphasis on "unfairness" appears to revive—without mentioning the statute—the arguments from his written motion for relief under K.S.A. 2018 Supp. 60-260(b)(6), which says that courts may set aside a final judgment for "any other reason that justifies relief." We will examine both of those possible grounds for relief in turn.

*K.S.A. 2018 Supp. 60-260(b)(1)*

A trial court may grant a motion to set aside a judgment under K.S.A. 2018 Supp. 60-260(b)(1), when it finds "(1) that the nondefaulting party will not be prejudiced by the reopening, (2) that the defaulting party has a meritorious defense, and (3) that the default was not the result of inexcusable neglect or a willful act." *Montez v. Tonkawa Village Apartments*, 215 Kan. 59, Syl. ¶ 4, 523 P.2d 351 (1974); see also *Garcia*, 303 Kan. at 569.

18

In his motion below, Mark did not address the first factor—lack of prejudice to Mary as the nondefaulting party—at all. He also did not address this factor during the hearing on his motion. On the basis of this omission alone, we would be justified in upholding the trial court's decision to overrule Mark's motion under K.S.A. 2018 Supp. 60-260(b)(1). Mark failed to argue lack of prejudice to Mary—one of the three necessary *Montez* factors—and therefore the trial court did not make any findings on the issue. Mark also did not move for specific findings on the issue.

On appeal, Mary responds that setting aside the decree would "cause [her] significant prejudice, in terms of further unreasonable delay and additional attorneys' fees." She notes that by the time of the final hearing on December 21, 2017, the case had been pending for over 19 months, and that over three years have now passed since she filed for divorce. She points out that she incurred significant attorney fees preparing for the first trial at which Mark failed to appear or present evidence.

Mark also did not mention having a "meritorious defense"—another one of the key *Montez* factors—anywhere in his motion to set aside the decree. But he did disagree with Mary's valuation of the couple's property which was adopted by the trial court in the decree. Mark also stated that he had a "valid claim for maintenance" because he claimed he will have no income after leaving prison. Mark sought spousal maintenance in the pretrial questionnaire that he timely filed, but the court failed to consider. Looking to the substance of his arguments, rather than failure to invoke the statutory language, we conclude that these allegations, pleaded in his motion, probably are sufficient to be considered a meritorious defense. See *Garcia*, 303 Kan. at 569 (finding that trial court correctly found Garcia presented a meritorious defense when "[t]he facts necessary for that defense, as well as [the appellee's] subsequent stated statute of limitations defense, were readily discernible from Garcia's petition"). So we treat the second *Montez* factor as sufficiently invoked.

19

With respect to the third *Montez* factor—a finding that the default was not the result of "inexcusable neglect or a willful act," Mark's argument falls short. The party seeking relief has the burden to prove excusable neglect by clear and convincing evidence. *State ex rel. Stovall v. Alivio*, 275 Kan. 169, 173, 61 P.3d 687 (2003). According to our Supreme Court, excusable neglect under K.S.A. 2018 Supp. 60-260(b)(1) "is not susceptible to clear definition. What constitutes excusable neglect under the statute must be determined on a case by case basis under the facts presented." *Jenkins v. Arnold*, 223 Kan. 298, 299, 573 P.2d 1013 (1978).

In *In re Estate of Eccleston*, No. 105,778, 2012 WL 2476984, at *3 (Kan. App. 2012) (unpublished opinion), a panel of our court "upheld a district court's denial of a K.S.A. 60-260(b)(1) motion based on its finding that the appellant knew documents crucial to his case existed but failed to take any steps to obtain them during the course of litigation." *Morton County Hospital v. Howell*, 51 Kan. App. 2d 1103, 1112, 361 P.3d 515 (2015).

Similarly, in *Howell*, another panel of this court held that Howell's "confusion" about the judgment rendered after a hearing he attended did not constitute "excusable neglect." 51 Kan. App. 2d at 1113. The panel noted that "confusion related to proceedings does not qualify as excusable neglect." 51 Kan. App. 2d at 1113. Thus, a reasonable person could conclude that Mark's claim that he did not understand that the "final hearing" was a trial does not constitute excusable neglect.

In sum, and particularly grounded in Mark's complete silence on the first *Montez* factor, we hold the trial court did not abuse its discretion by rejecting Mark's motion for relief under K.S.A. 2018 Supp. 60-260(b)(1).

*K.S.A. 2018 Supp. 60-260(b)(6)*

This leaves only Mark's claim under K.S.A. 2018 Supp. 60-260(b)(6), which allows a trial court to set a aside a judgment for "any other reason that justifies relief." This statute is "to be liberally construed 'to preserve the delicate balance between the conflicting principles that litigation be brought to an end and that justice be done in light of all the facts.'" *In re Estate of Newland*, 240 Kan. 249, 260, 730 P.2d 351 (1986).

When considering motions to set aside judgments under K.S.A. 2018 Supp. 60-260(b)(6), trial courts may consider whether the movant has shown a meritorious defense. *Garcia*, 303 Kan. at 568. As we noted above, Mark's dispute about the valuation of the couple's property and claim for maintenance may be considered a meritorious defense. Courts may also consider prejudice to the nonmoving party. *Garcia*, 303 Kan. at 570. As also discussed above, Mark did not address prejudice to Mary. Mary, however, argues that she will be prejudiced by the additional attorney fees and the delay—over three years since filing for divorce—in finality of the judgment.

Both below and on appeal, Mark referred to "basic principles of law" derived from *Jenkins v. Arnold*, 223 Kan. 298, 299, 573 P.2d 1013 (1978). While Mark addresses these principles one by one, his arguments overlap and generally amount to a claim that the trial court was unfair.

Mark characterizes the trial court's choice to proceed from the November 2017 pretrial conference to the December 21, 2017 final hearing as a "smash and grab" by Mary and says that Mary undertook "a push to end the case while Mark was in prison." Mark says that the trial court "rush[ed] to trial in a case where the parties themselves languished from May 2016 to almost a year later, in February of 2017, when the court had called a status conference." Mark contends that "doubt abounds" with respect to

21

valuation of the couple's property. He argues that the significant amount of money at issue and the "fruits of 30 years of marriage" weigh against a default judgment.

Mary, on the other hand, argues that Mark was treated fairly but declined to file an affidavit as ordered. She also argues that the decree was not unfair to Mark because he "received $843,189 worth of the parties' combined $1,306,971.00 in assets."

In considering the argument of each party we are thus forced to navigate murky water to determine whether the trial court abused its discretion by declining to set aside the divorce decree for "any other reason that justifies relief." The standard of review is critical here. On appeal, Mark attacks the entirety of the trial court's actions between the pretrial conference and the motion to set aside the judgment as unfair. Mark, however, did not make these same arguments below. Instead, he argued that the trial court's decree would have been different had it not erroneously omitted his pretrial questionnaire and unsworn net worth statement, and that he "mistakenly" thought that the December 21, 2017 hearing was not a trial. When conducting abuse of discretion review, we cannot fairly fault a trial court for failing to consider arguments that the appealing party failed to make.

Additionally, the record is clear that the trial court scheduled the case for a "final hearing" and ordered that Mark could submit an "[a]ffidavit setting forth his factual contentions" and his pretrial questionnaire. Mark does not deny that he received this order; indeed he filed his pretrial questionnaire by the deadline. Nevertheless, Mark, who was an attorney for many years and therefore knows better than most the difference between an affidavit and an unsworn statement, neglected to file any affidavits by the given deadline. Despite failing to avail himself of the opportunity given him by the court, Mark now seeks the proverbial second bite at the apple by arguing that the whole situation was unfair.

We believe a reasonable person could agree with the trial court's assessment that the decree should not be set aside for unfairness because Mark failed to take advantage of the opportunity he had to submit an affidavit. We cannot find that the trial court abused its discretion by denying Mark's motion under K.S.A. 2018 Supp. 60-260(b)(6).

*Did substantial competent evidence support the trial court's ruling?*

As his final argument on appeal, Mark contends that the divorce decree was not supported by substantial competent evidence. In her brief, Mary obviously disagrees.

In a divorce action, we will not overturn a trial court's division of property absent an abuse of discretion. *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 715, 229 P.3d 1187 (2010). Mark, as the party arguing abuse of discretion, bears the burden to show such an abuse. See *In re Marriage of Larson*, 257 Kan. 456, 463-64, 894 P.2d 809 (1995). A trial court's division of property should be affirmed if it is supported by substantial competent evidence. *In re Marriage of Hair*, 40 Kan. App. 2d 475, 486, 193 P.3d 504 (2008). "Substantial competent evidence is legal and relevant evidence a reasonable person could accept to support a conclusion." *State v. Bird*, 298 Kan. 393, 399, 312 P.3d 1265 (2013). Trial courts are to divide property fairly and equitably, but the division does not have to be equal. *In re Marriage of Hair*, 40 Kan. App. 2d at 481.

Mark's primary contention is that the trial court lacked substantial competent evidence for its division of property because Mary failed to admit her Exhibit 2 notebook containing her financial documents into evidence and the trial court therefore relied only on Mary's trial testimony for valuation. Because Mary's notebook was not admitted as evidence, Mark argues, the trial court lacked substantial competent evidence for its property division. He asserts that Mary's testimony was hearsay because she just testified to what the documents stated about the value of most of the couple's assets and did not testify as to her own opinion on value. Mark states that "[j]ust talking about a document

23

and asking a witness to say what it says is hearsay, and of course, there was no objection on the record." He provides no authority for this argument. According to Mark, "Mary's testimony alone did not cure Mary's failure to offer into evidence that trial notebook." Again, he provides no authority for this argument.

Mary, on the other hand, argues that her failure to admit the evidence at trial was a mere "technical" or "inadvertent error" and that the trial court therefore properly considered her Exhibit 2 as evidence. Mary cites a series of cases, including the recent decision in *State v. Brown*, 307 Kan. 641, 645-47, 413 P.3d 783 (2018), for this proposition.

In *Brown*, the State marked several photographic exhibits, showed them to the witness, and published them to the jury as the witness explained the photographs during his testimony. Nevertheless, the State failed to formally move to admit the exhibits and the trial court failed to formally grant their admission. It is clear that, based on their conduct and exchanges, both the State and the trial court believed that the exhibits had been admitted. Defense counsel, who was present for all of this, never objected to the witness' use of the exhibits nor the exhibits being sent back with the jury during deliberations. Brown appealed, arguing that publication of the unadmitted photos to the jury violated his due process rights. Our Supreme Court ruled:

> "Here, the State marked the autopsy photographs as exhibits, showed them to Brown's counsel, and introduced them. Its expert witness provided extensive testimony regarding the photographs while they were displayed to the jury via projector. Statements throughout the trial by the prosecutor and the judge reveal their understanding that these exhibits were admitted into evidence. The defense remained silent during these exchanges. And despite a number of other opportunities at the trial court, the defense made no issue of these exhibits until appeal to this court. Under these circumstances, this court regards the photographs as admitted." 307 Kan. at 646-47.

Similarly, here, it appears as though both Mary and the trial court erroneously believed that Exhibit 2 had been admitted as evidence. The relevant excerpts of the hearing transcript are as follows:

"Q: Now, let me hand you Petitioner's Exhibit 2. And is that a trial notebook you and I put together with the pertinent information in it relating to your assets and liabilities and incomes as of May—as of the date of filing in May 2016?
"A: Yes.
"Q: Okay. So let's walk through that. The first page of Exhibit 2 is a net worth statement as of the date of filing; is that correct?
"A: Yes."

Mary and her counsel proceeded to review the contents of the notebook for the court. This included documents pertaining to: an appraisal of the couple's house, mortgages on the home, the values of the couple's retirement accounts, savings accounts, car values, household goods, Mark's various business endeavors, and the couple's incomes. Mary's counsel then gave the trial court a copy of her proposed divorce decree and rested without moving to admit Exhibit 2 as evidence. Mary's counsel also failed to move to admit Mary's Exhibit 3, detailing her attorney fees, as evidence.

After Mary rested, the trial court judge stated: "[H]aving heard the evidence, having reviewed the pleadings, having been familiar with this case and the issues that have been presented today and in the past, I will enter the proposed decree." The judge also stated:

"The Court finds the valuations that have been provided here today with respect to the house, the retirement accounts, savings accounts, and the business interests in— Mr. Schultz's interests in Gallas & Schultz that have been identified, are all appropriate valuations for the Court to utilize and is relying upon those. Evidence has been presented in support of those."

Later, at the close of the hearing on Mark's motion to set aside the decree, Mary's counsel had the following exchange with the trial court judge:

"[Mary's counsel]: And so are you going to allow us to withdraw the notebook for retention in the event of further proceedings?

"The Court: I will.

"[Mark's counsel]: Thank you, Your Honor."

Thus, it appears that, like in *Brown*, both Mary and the trial court thought that Exhibit 2 had been admitted, and they acted as such. Also, as in *Brown*, Mark did not object to the testimony about the notebook or the trial court's consideration of the notebook, as Mark was not present. Nor did Mark's counsel object to the trial court's apparent treatment of the exhibit as though it was admitted, as evident by the trial court's exchange with Mary's counsel at the end of the hearing on Mark's motion to set aside the decree.

As in *Brown*, we find that Exhibit 2 was properly considered by the trial court because both Mary and the court apparently erroneously believed it had been admitted, and the failure to formally admit the exhibit was more of a "technical or inadvertent error." *State v. Hagan*, 3 Kan. App. 2d 558, 563, 598 P.2d 550 (1979). The notebook and Mary's testimony constituted "legal and relevant evidence a reasonable person could accept to support a conclusion." *Bird*, 298 Kan. at 399. The trial court had substantial competent evidence for its property division order. Mark's arguments on this issue fail.

Affirmed.