IN THE SUPREME COURT OF THE STATE OF KANSAS

Nos. 111,690
111,691

STATE OF KANSAS,
*Appellee*,

v.

JERONE H. BROWN,
*Appellant*.

SYLLABUS BY THE COURT

1.

K.S.A. 60-404 requires a timely and specific objection to the admission of evidence when presented at trial.

2.

Subsequent to *State v. King*, 288 Kan. 333, 342, 204 P.3d 585 (2009), the three judicially recognized exceptions for allowing appellate review of issues not raised below have not been applied to absolve a party of K.S.A. 60-404 violations.

3.

Where exhibits are identified and treated by court and counsel as if admitted into evidence, despite no formal admission, on appeal they are regarded as admitted and K.S.A. 60-404 applies.

Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed March 23, 2018. Affirmed.

*Kristen B. Patty*, of Wichita, argued the cause and was on the brief for appellant.

*Lance J. Gillett*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The decision of the court was delivered by

NUSS, C.J.: Jerone Brown appeals his convictions for aggravated robbery and murder. Brown specifically contends the State improperly published to the jury his victim's autopsy photographs that he claims were not admitted into evidence. According to Brown, this action violated his rights to due process and an impartial jury, requiring reversal and remand for a new trial.

We agree with the State that Brown's issue is not preserved for appellate review. So his convictions are affirmed.

## FACTS AND PROCEDURAL HISTORY

Brown was convicted of two murders, both carried out by multiple defendants. The murder of Shawn Rhone took place in early January 2013. Convicted of this murder were brothers Jerone, Shawn, and Milo Brown, as well as their cousin Myron Peters.

The murder of Adji Tampone occurred sometime around December 31, 2012. Jerone and Shawn Brown were convicted of this murder. The present appeal involves photographs of Tampone's autopsy.

At trial, forensic pathologist and deputy coroner Dr. Timothy Gorrill gave detailed testimony about Tampone's autopsy and its accompanying photographs (State's Exhibits 22A through 22H), as exemplified by the following excerpt:

2

"Q: Dr. Gorrill, when you conduct an autopsy, is it also documented through photographs?

"A: Yes, it is.

"Q: And is that so you can clearly describe for a jury the injuries an individual sustained?

"A: Yes.

"[State's Attorney]: May I approach the witness, Your Honor?

"The Court: You may.

"Q: [*Sic*] Show you what has been previously been [*sic*] shown to defense counsel, marked as *State's Exhibit 22; specifically 22A through 22H.*

"*(State's Exhibits 22A through 22H were identified).*

"Q: Would you please take a look at those to yourself.

"A: (Witness complies.)

"Q: Have you had an opportunity to review those photos?

"A: Yes, I have.

"Q: Are those photos that were taken during Adji Tampone's autopsy?

"A: Yes.

"Q: And would utilizing those photos assist you to show the injuries or describe them for a jury?

"A: Yes.

"Q: I prefer to use the Elmo [projector] up here. And if you could describe or identify the picture by its label on the back.

"The Court: Refocus.

"Q: All right. You can place the picture in the corner. If you could identify that photograph, and tell us what it is depicting." (Emphasis added.)

Gorrill then identified and explained each of the State's eight autopsy photographic exhibits—22A through 22H—all while displaying them to the jury via the Elmo projector as instructed. The defense did not object during Gorrill's testimony.

Immediately after Gorrill's testimony—contained in seven pages of trial transcript—he was excused without any cross-examination, and the court recessed overnight. The next mention of these photographic exhibits came the next day, when the State used the testimony of a crime scene investigator to authenticate another exhibit:

> "[State]: Your Honor, I would move to admit 22-I. (State's Exhibit 22-I was offered.)
>
> "[Defense]: No objection.
>
> "The Court: I believe it's already been admitted.
>
> "[State]: *I think 22A through G [sic] has already been admitted.*
>
> "The Court: 22 'I' will be admitted.
>
> "(State's Exhibit 22-I was admitted.)" (Emphasis added.)

The defense did not object to the prosecutor's characterization of the status of the autopsy photographic exhibits, i.e., their being previously admitted.

The third mention of Exhibits 22A through 22H came a few days later. The jury had been excused and the court was conferring with both counsel when the State appeared to attempt to correct any deficiencies regarding admission of its exhibits:

> "The Court: Just one or two questions. Obviously it's just before 11:00. Take our noon recess. We have cross-examination. Do we have any other State's witnesses?
>
> "[State]: *Judge, I'll compare with you the exhibits. But I do think we're going to rest after this witness.*
>
> "The Court: *The notes I have, I have Exhibits 1 through 33 exclusive [sic],* except Exhibit 28, which is shown on my list as a registration card from the Surf Motel.
>
> "*(State's Exhibit 22 A-H were offered and admitted.)*
>
> "[State]: *Judge, I believe that's what we have as well. I'll confirm that on a break.* I think that is where we're at; upon cross and redirect, we will be resting." (Emphasis added.)

4

Despite being present for this exchange, the defense did not object or attempt to correct the apparent understanding of the prosecutor and the judge that the exhibits already had been admitted into evidence. Brown now argues, however, that the requirements for admitting these photographs into evidence—the prosecutor's formal offer and the court's formal admission—were missing in this exchange and throughout the trial. According to Brown, the court reporter's parenthetical notation cannot satisfy those requirements here.

These exhibits were again mentioned after the State's final witness finished testifying. After the court asked if there were any more witnesses, the State responded, "Judge, with the exhibits 1 through 33, minus number 28, the State would rest." The defense did not object to the message implicit in the State's response, i.e., that these exhibits had been admitted—so it was resting its case.

The judge later told the jury, "[G]o to the deliberation room and we'll bring you copies of the written instructions. *All* the exhibits will be brought back for your consideration." (Emphasis added.) The defense did not object to any of the exhibits the judge seemingly understood to have been admitted, including the eight autopsy photographs (Exhibits 22A through 22H), being sent to the jury room.

Ultimately, the defense filed an unsuccessful motion for a new trial and judgment of acquittal. The motion did not mention publication of these photographs as a claim of error.

This court's jurisdiction is provided by K.S.A. 2017 Supp. 22-3601(b)(3) (life sentence imposed).

ANALYSIS

Issue: *Publication of the autopsy photographs to the jury did not violate Brown's rights to due process and an impartial jury.*

In response to Brown's contention that Tampone's autopsy photographs were improperly published to the jury because they were not admitted into evidence, the State argues this issue was not preserved for appellate review. In the alternative, it argues that the autopsy photographs *were* admitted into evidence but even if not, any error in publishing them to the jury was harmless.

*Standard of review*

When the adequacy of the trial court's legal basis for admission of evidence is challenged, the appellate court will review the challenge under a de novo standard. *State v. Dukes*, 290 Kan. 485, 487, 231 P.3d 558 (2010).

*Discussion*

It is undisputed that Brown made no objections to these autopsy photographs until this appeal. Our caselaw regarding the necessity of contemporaneous objections is clear. "The contemporaneous objection rule requires each party to make a specific and timely objection at trial in order to preserve evidentiary issues for appeal. K.S.A. 60-404. The purpose of the rule is to avoid the use of tainted evidence and thereby avoid possible reversal and a new trial." *Dukes*, 290 Kan. at 488 (citing *State v. King*, 288 Kan. 333, 342, 204 P.3d 585 [2009]). This rule not only gives the trial court the opportunity to address the issue, but practically it also constitutes "'one of necessity if litigation is ever to be brought to an end.'" *State v. Fisher*, 222 Kan. 76, 83, 563 P.2d 1012 (1977).

Subsequent to our decision in *King*, we have not applied the three recognized exceptions—for allowing appellate review of issues not raised below—to absolve a party of K.S.A. 60-404 violations. *Dukes*, 290 Kan. at 488 (identifying the exceptions and expressing concern that the contemporaneous objection rule "case law exceptions would soon swallow the general statutory rule [K.S.A. 60-404]") (citing *State v. Richmond*, 289 Kan. 419, 429-30, 212 P.3d 165 [2009]). Accordingly, Brown's photographic issue is not preserved for our review. 290 Kan. at 488 (defendant's argument that admission of evidence violated his constitutional rights under the Confrontation Clause was not preserved for appeal because he failed to raise a specific and timely objection at trial court).

Coiled within Brown's contention is an assertion that the language of K.S.A. 60-404 indicates the statute only applies to admitted evidence. And because Brown contends the photographs were not ever admitted into evidence, then the requirements of 60-404 arguably have no application. The statute provides:

> "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of *the erroneous admission of evidence* unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection." (Emphasis added.)

We reject this assertion because the judge and both counsel certainly considered the photographs to have been admitted into evidence—despite no recording of a formal motion for their admission by the State and no recording of a formal granting of their admission by the court.

The United States Court of Appeals for the D.C. Circuit provides considerable guidance in *United States v. Barrett*, 111 F.3d 947 (D.C. Cir. 1997). There, the defendant

7

argued insufficient evidence existed to support his convictions because the trial exhibits were never formally admitted into evidence but only marked for identification. The court squarely rejected this argument:

> "*We find no merit to this challenge. The exhibits were treated below, without objection, as if they were admitted into evidence; they are therefore deemed admitted. See United States v. Bizanowicz*, 745 F.2d 120, 123 (1st Cir. 1984) (tape played for jury deemed admitted 'where at least *a quo* there was no doubt that [it] was admitted, notwithstanding the judge's failure to instruct the courtroom deputy directly to mark the tape as an exhibit' and appellant did not object to playing); *United States v. Stapleton*, 494 F.2d 1269, 1270 (9th Cir.) (seven exhibits marked for identification but not formally offered or received into evidence deemed admitted where '[t]here was extensive testimony about each of them,' 'both parties, and the judge, acted as if they were in evidence, and the judge relied upon them in finding [the defendant] guilty' and 'defense counsel raised no question about the exhibits not being in evidence'), *cert. denied*, 419 U.S. 1002, 95 S. Ct. 321, 42 L. Ed. 2d 277 (1974)." 111 F.3d at 951.

See *United States v. McCoy*, 242 F.3d 399, 402-03 (D.C. Cir. 2001) (holding that where the court clerk's exhibit list shows exhibits admitted and all parties understand them to be admitted, there is no error); *Voelkel v. State*, 629 S.W.2d 243 (Tex. App. 1982) (holding that exhibits never offered or admitted into evidence constitute no error where there was testimony and discussion without objection regarding the exhibits); and *Newfound Management Corp., General Partner of Newfound Ltd. Partnership v. Sewer*, 34 F. Supp. 2d 305, 310-11 (D.V.I. 1999) (holding that exhibits would be treated as admitted into evidence, even though they were never formally admitted into evidence, where all exhibits were identified and treated as if admitted into evidence). See also *Gray v. United States*, 100 A.3d 129 (D.C. 2014) (not plain error for trial court to reach verdict relying on videos that had not been formally authenticated and admitted into evidence but, among other things, had been played in open court without objection, witnesses discussed

8

them, and defense did not object to the court's reliance on them in announcing the verdict) (citing *Barrett*, 111 F.3d at 951).

Here, the State marked the autopsy photographs as exhibits, showed them to Brown's counsel, and introduced them. Its expert witness provided extensive testimony regarding the photographs while they were displayed to the jury via projector. Statements throughout the trial by the prosecutor and the judge reveal their understanding that these exhibits were admitted into evidence. The defense remained silent during these exchanges. And despite a number of other opportunities at the trial court, the defense made no issue of these exhibits until appeal to this court. Under these circumstances, this court regards the photographs as admitted. See *Barrett,* 111 F.3d at 951.

The decision of the district court is affirmed.