NOT DESIGNATED FOR PUBLICATION

No. 121,303

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TREMAIN LYDELL SHEARS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Opinion filed October 8, 2021. Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., ATCHESON, J., and BURGESS, S.J.

ATCHESON, J.:  A jury sitting in Sedgwick County District Court convicted Tremain Shears of two counts of attempted first-degree murder and seven other felonies arising from a series of violent attacks on Marcqual Hightower. Hightower attributed the incidents to a vengeful Shears acting to get even for a drive-by shooting of his mother's house. Although the case and the trial took some odd turns, Shears has failed to show reversible error. We, therefore, affirm Shears' convictions and the resulting sentences.

1

FACTUAL AND LEGAL BACKGROUND

We begin with descriptions of the incidents giving rise to the charges against Shears.

• As Hightower walked to a friend's house in Plainview at about 1 a.m. on April 24, 2016, he heard gunfire and was hit in both legs. Hightower went to an area hospital for treatment. He was generally uncooperative with law enforcement officers who questioned him about the attack. But Hightower told relatives that "Gotti" shot him. The trial evidence showed Shears used "Gotti" as a street name. Hightower later told relatives he saw a white Dodge Charger he associated with Gotti in the vicinity when he was shot.

Given Hightower's lack of cooperation and the absence of other leads, law enforcement officers did not actively investigate the incident. Shears was later charged with and ultimately convicted of aggravated battery and criminal possession of a firearm based on this shooting.

• On July 3, Hightower was at his grandmother's home when a white Dodge Charger twice drove past the house. He remarked to his sister that the car was Gotti's. Two days later, Hightower sat on the porch of the house when the same car came down the street. A witness told law enforcement officers a man in the car fired shots at either the house or Hightower. Hightower was not injured, and he again declined to cooperate with the police. Investigators collected physical evidence, including shell casings, from the scene. Shears was eventually charged with and convicted of one count of attempted first-degree murder, two counts of criminal discharge of a firearm at a dwelling, and one count of criminal possession of a firearm for the July 5 incident.

• On September 11, friends of Hightower dropped him off about 4 a.m. at the house of a woman he had been communicating with on social media. She refused to let

him in, and Hightower immediately concluded Shears had set him up. Someone then stepped around to the front of the house and shot at Hightower as he was standing on the porch. Hightower suffered serious injuries to both legs requiring multiple surgeries. Investigators collected 12 shell casings in front of the house. Based on a comparison of the shell casings, a forensic examiner later concluded the same handgun was used in the July 5 and September 11 attacks.

Hightower told both family members and law enforcement officers that Shears shot him. Hightower explained to them that Shears was trying to get even for what he believed was a drive-by shooting of his mother's house that Hightower ordered or executed. Shears was charged with and convicted of attempted first-degree murder, aggravated battery, and criminal possession of a firearm based on the September 11 shooting.

The fitful investigation of the incidents portended the progression of the case after the State charged Shears in September 2016. At two preliminary hearings, Hightower testified he didn't know who shot him and disclaimed being acquainted with "Gotti." He said he was unable to identify Shears. When Shears' jury trial began in July 2018, Hightower was in jail on his own criminal charges. He apparently bonded out the first day of the trial, and the State could not locate him to appear as a witness.

The district court granted the State's motion to declare Hightower unavailable and to allow the introduction of his testimony from the preliminary hearings for the jury's consideration. The State then sought to "impeach" the preliminary hearing testimony by calling family members and law enforcement officers as witnesses to explain to the jury that Hightower had previously told them Gotti attacked him on April 24, July 5, and September 11, 2016. During the trial, Shears did not object to the State's request that the district court find Hightower to be an unavailable witness. Nor did he object to the State's

3

use of the preliminary hearing testimony to open the door to Hightower's out-of-court statements identifying Gotti.

As we have indicated, the jury convicted Shears of nine felonies, including two counts of attempted first-degree murder, a severity level 1 person felony and the most serious of the charges against him. The district court imposed a controlling term of imprisonment of 852 months on Shears, combining concurrent and consecutive guidelines sentences on individual convictions to be followed by a 36-month period of postrelease supervision. Shears has not challenged the legal mechanics of the sentence on appeal, so we do not discuss that aspect of the case further.

LEGAL ANALYSIS

On appeal, Shears raises four main points, including a claim for reversal based on cumulative error. Before turning to those issues, we pause to outline the contemporaneous objection rule, codified in K.S.A. 60-404, that requires a timely objection during a jury trial to the admission testimony or other evidence. The rule figures heavily in our disposition of the appellate issues.

The Kansas Supreme Court has vigorously and vigilantly enforced compliance with the rule as a necessary condition for appellate review of a claim the district court erroneously admitted evidence. *State v. Carter*, 312 Kan. 526, Syl. ¶ 6, 477 P.3d 1004 (2020); *State v. Brown*, 307 Kan. 641, 644-45, 413 P.3d 783 (2018) (characterizing contemporaneous objection rule to be clear and regularly stated in caselaw). We recently characterized the court's adherence to the rule as a prerequisite for appellate review to be "implacable." See *State v. Henderson*, No. 121,264, 2021 WL 300277, at *1 (Kan. App. 2021) (unpublished opinion). In short, a party must object to testimony or other evidence when it is introduced at trial to preserve any challenge to its admission for appellate review.

4

Without belaboring the matter, the rule serves an essential function in civil and criminal actions and should be carefully enforced. The rule requires that a party call to the district court's attention a perceived problem with evidence as it is being offered—typically with an objection. Cued by the objection, the district court can then assess the situation and take any action necessary to ensure a fair trial, as by excluding improper evidence or granting a request for a limiting instruction. But a party failing to lodge a timely objection forfeits any later complaint about the claimed deficiency—whether in a request for a new trial to the district court or for reversal of an adverse verdict on appeal—because the district court had been afforded no opportunity to fix the problem when it arose. A prompt correction would avert a drastic after-the-fact remedy upsetting a verdict and judgment. See *Brown*, 307 Kan. at 645. That is a laudable objective and a good rule.

For his initial point on appeal, Shears contends Hightower's out-of-court statements to relatives and law enforcement officers identifying him as the shooter in the three incidents constituted inadmissible hearsay. The problem for Shears is one of preservation, and it's insurmountable in our view, especially given the Kansas Supreme Court's position on the contemporaneous objection rule. During the trial, Shears sporadically objected to the testimony—sometimes he did; sometimes he didn't. So the jury heard unobjected to testimony that Hightower said Shears was responsible for the shootings. We cannot consider any claimed error in the admission of that testimony for want of a contemporaneous objection.

Even if the district court erred in admitting other testimony to that effect over the objections Shears did make, the testimony was simply repetitive of what had been admitted without objection. The appellate courts have consistently declined to find reversible error when that happens. *State v. Sean*, 306 Kan. 963, 986, 399 P.3d 168 (2017) (no prejudicial error when evidence defendant objected to was cumulative of other

5

evidence admitted without objection); *State v. Raskie*, 293 Kan. 906, 913, 269 P.3d 1268 (2012); *State v. Peterson*, No. 116,931, 2021 WL 3823405, at *6 (Kan. App. 2021) (unpublished opinion), *petition for rev. filed* September 27, 2021. We find the same to be true here. Even if Shears had a valid legal basis to keep the evidence out, he failed to sufficiently preserve it in the district court with only intermittent objections.

For his second point, Shears contends the district court erred in admitting evidence of his association with a street gang. Gang membership may be relevant in a case but carries a particular danger for undue prejudice, depending on the circumstances. See *State v. Dean*, 310 Kan. 848, 861-63, 450 P.3d 819 (2019) (discussing factors bearing on admissibility of gang evidence); see also *State v. Peppers*, 294 Kan. 377, 391, 276 P.3d 148 (2012) (recognizing gang membership evidence may be unduly prejudicial in some circumstances). We need not delve into the nuances of the facts here or how probative value ought to be weighed against undue prejudice because Shears did not object to the introduction of the gang affiliation evidence during the trial. Any potential error, therefore, has not been preserved for our review. That ends our consideration of the issue. See *Carter*, 312 Kan. at 535-36 (court declines to consider appellate challenge to admission of evidence of gang activity because defendant made no contemporaneous trial objection).

For his next point, Shears contends the State failed to present sufficient evidence at trial to support the jury's guilty verdict on the aggravated battery charge arising from the September 11 incident. So the conviction should be reversed. Shears expressly says he is not arguing the convictions for attempted first-degree murder and aggravated battery are duplicitous even though they involve one shooting and the same victim. Rather, he casts the deficiency as a sufficiency issue because the attempted first-degree murder conviction requires proof of premeditation and, therefore, supersedes the aggravated battery conviction. We find the contention somewhat difficult to follow.

Shears argues the convictions for attempted first-degree murder and aggravated battery arise from a discrete and unified course of criminal conduct on September 11—the firing of 12 shots in rapid succession at Hightower. We readily accept that premise. See *Brown v. State*, No. 105,592, 2012 WL 651862, at *3 (Kan. App. 2012) (unpublished opinion) (applying "same conduct" test to aggravated assault charges). As Shears next points out, the prosecutor told the jury the multiple shots provided circumstantial evidence tending to prove premeditation as a necessary element of attempted first-degree murder. Again, we agree with the legal premise embodied in the prosecutor's closing argument. See *State v. Brownlee*, 302 Kan. 491, 517, 354 P.3d 525 (2015).

Shears goes on to outline the elements of attempted first-degree murder, including premeditation, and the elements of aggravated battery, which do not include premeditation. His argument then veers in a puzzling way. Shears seems to reason that because the State proved and the jury found the September 11 shooter acted with premeditation consistent with the conviction for attempted first-degree murder, the evidence necessarily was insufficient to establish an aggravated battery. Premeditation entails consciously thinking about an act or a course of conduct before undertaking it. See *State v. Bernhardt*, 304 Kan. 460, 464-65, 372 P.3d 1161 (2016); see also Black's Law Dictionary 1429 (11th ed. 2019) (defining premeditation as "[c]onscious consideration and planning that precedes an act . . . the pondering of an action before carrying it out"). Although premeditation is not an element of aggravated battery, neither is premeditation inherently inconsistent with the crime of aggravated battery outlined in K.S.A. 2016 Supp. 21-5413. Aggravated battery often rests on a criminal act the perpetrator considers and weighs before engaging in the conduct. Lying in wait to ambush someone by shooting them repeatedly in the legs would be a fair example.

Shears' argument fails to advance a sound legal reason his conviction for aggravated battery in the September 11 shooting of Hightower cannot stand.

Finally, Shears contends he was deprived of a fair trial because of cumulative errors in the district court. Appellate courts may weigh the collective impact of trial errors and may grant relief if the overall impact of the deficiencies deprived the defendant of a fair hearing even when the errors considered individually would not necessarily require reversal of a conviction. *State v. Harris*, 310 Kan. 1026, 1041, 453 P.3d 1172 (2019); *State v. Smith-Parker*, 301 Kan. 132, 167-68, 340 P.3d 485 (2014). An appellate court examines the entire trial record to assess the aggregate effect of multiple trial errors. *Smith-Parker*, 301 Kan. at 167-68. The assessment takes account of "how the trial judge dealt with the errors as they arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence." *State v. Miller*, 308 Kan. 1119, 1176, 427 P.3d 907 (2018).

Here, however, Shears has not presented us with multiple errors we can consider. The cumulative error rule does not apply to purported errors that were either invited or unpreserved in the district court. Only properly preserved errors can be weighed on appeal. See *State v. Knight*, No. 105,092, 2012 WL 2325849, at *7 (Kan. App. 2012) (unpublished opinion). As we explained in *Knight*: "To do otherwise would allow a criminal defendant to resurrect lost errors—those waived, invited, or simply never raised in the district court—in the guise of cumulative error. Moribund errors do not gain vitality in that way." 2012 WL 2325849, at *7. The same is true here; Shears' claim fails.

Affirmed.