NOT DESIGNATED FOR PUBLICATION

No. 124,884

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

STEVEN MATTHEW SPEAKMAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID L. DAHL, judge. Submitted without oral argument. Opinion filed March 1, 2024. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett,* district attorney, and *Kris W. Kobach,* attorney general, for appellee.

Before WARNER, P.J., GARDNER and HURST, JJ.

HURST, J.: After a late night of drinking, Steven Matthew Speakman hit the victim—a person he called a good friend—in a manner that caused the victim's death. That is not disputed; Speakman admits that he hit the victim. The State charged Speakman with intentional second-degree murder for his actions. Speakman asks this court to reverse his conviction, alleging the district court erred in permitting the State to introduce evidence of Speakman's history of initiating violence when drinking to prove intent, motive, or knowledge. This court finds no reversible error in the district court's decision. The jury was unpersuaded by the limited evidence of intent and found

1

Speakman guilty of the lesser included charge of reckless involuntary manslaughter rather than intentional murder. Speakman also brings an unpreserved constitutional challenge to the district court's order that he register as an offender under the Kansas Offender Registration Act. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In the early morning of August 21, 2019, Wichita police arrived to the scene of a disturbance call and found the victim lying unresponsive on the ground of a grocery store parking lot. Speakman was also at the scene. Emergency personnel transported the victim to an area hospital where he remained for more than two weeks before succumbing to his injuries on September 5, 2019.

During the investigation, police officers learned that Speakman and the victim were friends and used to be roommates. While in the grocery store parking lot, a witness heard the victim say he would not give Speakman a ride home and that Speakman would have to walk. The witness said the victim and Speakman then got into a short physical altercation, after which they began walking together in the same direction. While Speakman and the victim were walking together, the witness saw Speakman hit the victim in the side of the face causing him to fall to the ground and hit his head. According to the witness, Speakman then yelled at the victim and—while the victim was lying on his back—Speakman straddled him and repeatedly punched the victim in the face with both fists.

Emergency medical services transported Speakman to the hospital where he declined medical treatment. Officers at the scene reported that Speakman had bruised and bloody hands, a cut on his right pinky, and a cut on the back of his head. Prior to being transported to the hospital, Speakman said that he had "blacked out" and later told an

2

officer that he had acted in self-defense. The State charged Speakman with intentional second-degree murder, and Speakman proceeded to a jury trial.

*Pretrial Motions on Admissibility*

Through pretrial motions, the State sought to admit evidence that Speakman had a history of violence when intoxicated; that Speakman had been drinking for an extended period of time before the incident occurred; that Speakman and the victim had fought on and off the night of the incident; and that Speakman had fought with another individual the night of the incident. The State anticipated several witnesses would testify about Speakman's temper, particularly when he was intoxicated. The State argued the evidence was admissible under K.S.A. 60-401(b) as "evidence having any tendency in reason to prove any material fact" to prove Speakman's intent, motive, and knowledge. Although the State did not believe the evidence was subject to the limitations on the admissibility of evidence of prior crimes and civil wrongs in K.S.A. 60-455, it argued that even if considered prior bad acts, the evidence would still be admissible because it was relevant to prove intent, motive, and knowledge.

At the pretrial hearing, the State explained:

"[T]here are witnesses that would testify that the defendant is what we would colloquially call a mean drunk, that when he drinks, he gets angry, that he tends to fight when he gets drunk, that he fought with another individual earlier in the evening, and that the defendant and the victim, they were together for a prolonged period of time that evening."

The State argued this evidence was relevant to motive and intent because Speakman was charged with an intentional crime and his defense "centers around the idea that he was justified in his actions, that what happened to the victim in this case was unintentional, and that he did not intend the consequences of his actions." Speakman's counsel

3

disagreed, arguing the evidence was not relevant and was more prejudicial than probative: "[W]hat they're asking you to do is go back at 9:00, 11:00, and 1:00 and say, well, if he was an ass at 9:00, 11:00, and 1:00, he must've been an ass at 3:00 o'clock."

The district court concluded that the evidence was admissible "for a number of reasons," including to prove motive and intent, and found that the standards in K.S.A. 60-455 relating to prior bad acts was "probably not applicable." But even if applicable, the evidence was admissible as to a "materially disputed fact" related to intent, motive, and knowledge and "the probative value far outweighs the prejudicial value." The court found that "Speakman's propensity for volatility when he is drinking is a critical element to the case."

*The Testimony of A.H.*

At trial, the State called several witnesses who testified about their experience with Speakman and the events on the day of the incident. One witness, A.H., said she was from the same town as Speakman and had known him and the victim for more than a decade. A.H. testified that Speakman and the victim were good friends at one point, and when they would get drunk together, Speakman would "say mean things" to the victim. She testified that drinking would increase the likelihood of Speakman yelling at the victim and trying to start fights with him. Despite Speakman's behavior, A.H. testified that the victim would "always have [Speakman's] back."

Speakman did not object during A.H.'s testimony.

*The Testimony of J.W.*

J.W. testified that he had known Speakman and the victim for roughly a decade, having met the victim through friends and Speakman while working as nightclub

4

security.  According to J.W., Speakman would harass and annoy people when he was drinking, although not in a violent way.  He also testified that Speakman made fun of the victim in the hours preceding the killing.

*The Testimony of Speakman*

Speakman testified that the victim was one of his best friends. They had gone drinking at several bars the night before the early morning incident and had ended up at a friend's house after midnight. Speakman testified he drank about 12 beers that night and "might've went overboard" when making fun of the victim that night. Speakman testified that as the night progressed, the victim became more upset about the teasing and the victim said he was "going to beat [Speakman's] ass." After the victim parked the car, Speakman said the victim threatened him and pushed him to the ground where he hit his head and "blacked out."  Speakman said he hit the victim because the victim was charging at him.

*The Testimony of Other Witnesses*

In addition to several police officers who participated in the investigation of the incident, the State also called two eyewitnesses of the verbal argument and physical altercation between Speakman and the victim. Most of this testimony is not relevant to Speakman's claims on appeal, but for two. One officer testified that shortly after the incident Speakman said he had acted in self-defense. Another officer testified that Speakman was intoxicated on the night of the incident.

*The Verdict*

In August 2021, the jury found Speakman guilty of the lesser included charge of reckless involuntary manslaughter. Speakman moved for a new trial and for a judgment

of acquittal; the district court denied both motions. Speakman also moved for either a dispositional or durational departure sentence, but, again, the district court denied his motion.

In December 2021, the district court sentenced Speakman to 43 months' imprisonment with 24 months' postrelease supervision. It also informed Speakman of his duty to register under the Kansas Offender Registration Act.

## DISCUSSION

Speakman claims the district court erred by admitting evidence of his prior bad acts. He separately claims—for the first time on appeal—that the order to register as an offender under the Kansas Offender Registration Act (KORA) is unconstitutional.

## I. THE DISTRICT COURT DID NOT COMMIT REVERSIBLE ERROR IN THE ADMISSION OF EVIDENCE

Speakman argues that the State inappropriately introduced evidence that Speakman categorizes as character and propensity evidence. Speakman objected to the introduction of evidence of his previous intoxicated actions based on relevance and argued the evidence was more prejudicial than probative. The district court disagreed with Speakman and ordered the evidence was admissible to prove his intent, motive, and knowledge and its probative value outweighed its prejudicial potential.

Generally, when appealing the trial court's allegedly erroneous admission or exclusion of evidence, the party claiming error must have contemporaneously objected to the admission or exclusion at trial. K.S.A. 60-404; *State v. Hillard*, 313 Kan. 830, 839-40, 491 P.3d 1223 (2021). A verdict shall not be reversed "by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely

6

interposed and so stated as to make clear the specific ground of objection." K.S.A. 60-404. This rule is not only intended to avoid the court's reliance on tainted evidence that could require reversal on appeal but also to provide the trial court with ample opportunity to mitigate the potential risk. State v. *Brown,* 307 Kan. 641, 645, 413 P.3d 783 (2018) (explaining the need to prevent use of inadmissible evidence and give the trial court the "opportunity to address the issue"). Stringent adherence to this rule also promotes litigation efficiency, allowing the district court to address and avoid reversible errors that prolong litigation. *State v. Fisher,* 222 Kan. 76, 83, 563 P.2d 1012 (1977).

On appeal, Speakman appears to object to the district court's pretrial decision to allow the State to present evidence related to his conduct while drinking and his earlier actions the day of the incident. Although Speakman objected to this evidence in the pretrial hearing, he concedes that his counsel's only contemporaneous objections occurred during J.W.'s testimony. Speakman did not contemporaneously object to most of the evidence admitted pursuant to that pretrial order, and for the reasons explained herein, only the evidence admitted over his contemporaneous objections is at issue. See *State v. Scheetz,* 318 Kan. ___, 541 P.3d 79, 83-84 (2024) (The Kansas Supreme Court has cautioned that appellate courts should strictly adhere to the preservation rule requiring contemporaneous objection when claiming erroneous admission of evidence.).

This case demonstrates why contemporaneous objections to the admissibility of evidence during trial are necessary—even when a pretrial hearing occurred. Here, the district court addressed this evidence generally at the pretrial hearing without knowledge of the exact witnesses who would testify; their relationship or experience with Speakman and the victim; the exact questions that would be asked; or how those questions would be answered. Therefore, even beyond the rule requiring contemporaneous objection, Speakman needed to contemporaneously object for practical reasons to identify the objectionable testimony to the court in the context of the trial.

7

Therefore, this court will only address Speakman's claims that the district court erroneously admitted evidence related to the limited times when his counsel contemporaneously objected.

## II. THE DISTRICT COURT DID NOT ERR IN ADMITTING J.W.'S TESTIMONY

Speakman objected twice during the State's examination of J.W. Speakman made the first objection in response to the State asking J.W. about an issue that occurred with J.W. in 2012. Speakman objected to the relevance of "[s]omething from 2012[.]" The court then had an off-the-record discussion with counsel for both parties after which Speakman's attorney said, "I will ask the Court to note my objection," and the court responded, "Your objection is noted." The witness went on to explain that in 2012 when he was a bouncer at a bar, he had experience with Speakman. J.W. stated Speakman was "[j]ust harassing people. Kind of all over the place, being loud, yelling. Grabbing people. Not necessarily in a violent manner, but just something that they weren't comfortable with."

Speakman next objected when the State asked J.W. to "describe the defendant generally when he's drunk." Speakman's attorney objected and said, "Again, I'm going to ask that you note my objection." The court "[n]oted and overruled" the objection. The following exchange then occurred between the prosecutor and J.W.:

> "[J.W.:] It seemed like there just wasn't any in between. It was all or nothing. Either sober or drunk, and usually when drunk, it was physically aggressive, loud, obnoxious.
> "[Prosecutor:] Would it be fair to say he picks fights with people?
> "[J.W.:] Yes. It seemed like [the victim] was constantly coming to his rescue. He would start things he couldn't finish.
> "[Prosecutor:] The defendant would start things he couldn't finish?
> "[J.W.:] Yes.
> "[Prosecutor]: Okay. And what do you mean when you say [the victim] was coming to his rescue?

8

"[J.W.:][The victim] would step in and try and diffuse the situation.

"[Prosecutor:] This I guess demeanor of the defendant you just described, is it accurate to say that he has been that way since you met him back in 2012 through the last time that you went out with him?

"[J.W.:] Yes.

"[Prosecutor:] When was the last time that you saw him?

"[J.W.:] The night of the incident.

"[Prosecutor:] Okay. The night that this happened?

"[J.W.:] Yes."

Although the contemporaneous objection preceding this testimony was not specific, it was clearly a reference to his prior objection based on relevance. While Speakman did not ask for a standing or continuing objection, the objection to this section of testimony was clearly referencing back to his prior relevance objection that the district court agreed to "note" after an off-the-record discussion. Speakman's attorney started his second objection with "again," which indicates its reference to the prior objection and asked the court to "note" his objection. The court did and promptly overruled. The court did not ask the basis of the objection—not that it was required—but in the context when overruling the objection without further discussion, the court understood the second objection to be a reference back to the previous objection. While a contemporaneous, specific objection is required, this court will not require the litigants and district courts to use only keywords or phrases to convey those objections. Some amount of trial flow and strategy must be permitted while also affording the district court an opportunity to address the objection at the time the evidence is introduced.

On appeal, Speakman argues that J.W.'s testimony was improper evidence of prior bad acts intended to impugn his character. Even though evidence of prior bad acts is "inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong," that was not the basis for his contemporaneous objections at trial. See K.S.A. 2022 Supp. 60-

455(a) (limiting evidence of prior bad acts). Speakman only objected to this evidence based on its relevance, and this court will only address that issue.

At the pretrial hearing, the district court found evidence of Speakman's previous actions while drunk relevant to his intent, motive, and knowledge. The State charged Speakman with intentional second-degree murder, K.S.A. 2022 Supp. 21-5403(a)(1), defined as "killing of a human being committed . . . [i]ntentionally," which required the State to prove Speakman had the specific intent to commit the crime. The jury instruction defined "intentionally" as "conduct when it is the person's conscious objective or desire to cause the result." See K.S.A. 2022 Supp. 21-5202(h). On appeal, rather than challenge the relevance of J.W.'s testimony as to Speakman's intent to kill the victim, Speakman appears to argue the evidence was unduly prejudicial. Although the district court addressed prejudice at the pretrial hearing, Speakman failed to contemporaneously object based on prejudice.

The transcript is not clear whether the district court evaluated the evidence as prior bad acts under K.S.A. 60-455 during the trial, but this court's review is materially unchanged. At trial, "all relevant evidence is admissible," and evidence is relevant if it has "any tendency in reason to prove any material fact." K.S.A. 60-407(f); K.S.A. 60-401(b). However, evidence of prior bad acts is inadmissible to prove a "person's disposition to commit crime," but it is admissible if "relevant to prove some other material fact including" motive, intent, or knowledge and its "probative value must outweigh its potential for producing undue prejudice." K.S.A. 2022 Supp. 60-455(a), (b); *State v. Claerhout*, 310 Kan. 924, 927, 453 P.3d 855 (2019).

Relevant evidence must be both material and probative. Material evidence is something that is disputed or at issue in the case, and evidence is probative when or if it has "any tendency to prove any material fact." *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021). So, J.W.'s testimony is relevant and admissible if it is material and probative

10

as to Speakman's motive, intent, or knowledge. This court reviews a trial court's relevancy ruling by first reviewing materiality de novo and then reviewing the probativeness for an abuse of discretion. 313 Kan. at 237.

The State charged Speakman with intentionally killing the victim, and the jury instruction defined intent as "conduct when it is the person's conscious objective or desire to cause the result." See K.S.A. 2022 Supp. 21-5202(h). So this court must first determine if Speakman's conduct when inebriated was material to prove his intent, motive, or knowledge on the evening of the incident. See K.S.A. 2022 Supp. 60-455(b) (prior bad act evidence is admissible "when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."). Evidence is material if it had "some real bearing on the decision in the case." *Claerhout*, 310 Kan. at 927.

Speakman denied intentionally killing the victim and requested a jury instruction on self-defense. Therefore, testimony that Speakman had a history of being a physical aggressor when drinking and initiating physical altercations could be material to showing Speakman's intent, motive, and knowledge the night of the incident. Specifically, that evidence could demonstrate that on the evening Speakman killed the victim, he had a "conscious objective or desire to cause the result." The district court did not err in determining that the evidence was material to Speakman's motive, intent, knowledge, or lack of mistake.

Having found evidence of Speakman's intent material, this court must then determine whether the district court abused its discretion in finding the evidence submitted probative of that intent and that its probative value outweighed the potential for undue prejudice. *State v. Haygood*, 308 Kan. 1387, 1392-93, 430 P.3d 11 (2018). The trial court's decision is an abuse of discretion if "(1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact."

11

*Levy*, 313 Kan. at 237. The probative value of evidence is evaluated by "how clearly the prior act was proved; how probative the evidence is of the material fact sought to be proved; how seriously disputed the material fact is; and whether the government can obtain any less prejudicial evidence." *State v. Boysaw*, 309 Kan. 526, 541, 439 P.3d 909 (2019).

Speakman's intent to kill the victim was seriously disputed. Speakman claimed the victim was angry with him and initiated the physical altercation in the parking lot. Rather than acting intentionally, Speakman said he hit the victim "[b]ecause he was – started charging at me again like he was either going to push me or hit me." J.W. testified in the objected-to testimony that Speakman was "physically aggressive, loud, [and] obnoxious" whether drunk or sober and that he would pick fights with people. J.W. also testified that the victim would come "to [Speakman's] rescue" when Speakman "would start things he couldn't finish." This testimony was bolstered by A.H.'s testimony—which was not objected to at trial—and the jury could have found this testimony credible to prove Speakman's prior conduct. This evidence is somewhat probative to prove Speakman did not act in self-defense but was not particularly probative of Speakman's intent to kill the victim. Although it could have been, the actual testimony fell short of proving Speakman's intent to kill the victim. Even so, this court cannot say the district court abused its discretion by permitting the testimony.

Even if the evidence is relevant—that is, material and probative—this court must determine whether the district court abused its discretion in determining the prejudicial effect of the evidence did not outweigh the probative value. *Claerhout*, 310 Kan. at 927. fIn evaluating the potential prejudice, this court should consider "the likelihood that such evidence will contribute to an improperly based jury verdict; the extent to which such evidence may distract the jury from the central issues of the trial; and how time consuming it will be to prove the prior conduct." *Boysaw*, 309 Kan. at 541.

12

The two portions of J.W.'s testimony at issue were a small part of the evidence against Speakman. In the first part, J.W. testified that Speakman would touch people in an annoying manner when drinking, but that he was not violent during those interactions. So, that portion of J.W.'s testimony was unlikely to contribute to an improperly based jury verdict. J.W.'s testimony in the second portion was more pointed to Speakman's history or tendency to initiate fights when drinking. However, the testimony was short, did not include specific incidents, and was not distracting to the central issue of the case.

The parties agreed that Speakman hit the victim, causing his death. The central issues were whether he intended to kill the victim and whether he was acting in self-defense. Clearly, the short portions of J.W.'s testimony that Speakman objected to did not confuse those issues. Two eyewitnesses undermined Speakman's claims of self-defense. Witnesses to Speakman's conduct earlier in the night also supported portions of the State's case. Moreover, any argument that J.W.'s evidence was unduly prejudicial is easily overcome by the outcome. The jury obviously did not find J.W.'s testimony particularly probative of Speakman's intent because he was not found guilty of intentional murder.

The State's attempt to bolster its evidence of intent, motive, and knowledge with J.W.'s testimony consumed little time at the trial, was unlikely to contribute to an improper jury verdict, and was not distracting to the jury when Speakman and the victim's relationship was central to the case. Considering the evidence, the jury was not confused, distracted, or overcome by J.W.'s testimony. The district court did not abuse its discretion in finding the probative value of the evidence was not outweighed by the potential prejudice.

13

III. Any Error in Admitting J.W.'s Testimony Was Harmless

Even assuming the district court erred in admitting evidence of Speakman's history of initiating physical violence, such error is subject to review for harmlessness. *State v. Gunby*, 282 Kan. 39, 57-58, 144 P.3d 647 (2006) "Unless justice requires otherwise, no error in admitting or excluding evidence . . . is ground for granting a new trial." K.S.A. 2022 Supp. 60-261. This court "must disregard all errors and defects that do not affect any party's substantial rights." K.S.A. 2022 Supp. 60-261. Speakman alleges the district court violated a statutory evidence rule, and, thus, in evaluating harmlessness, the State must demonstrate that considering the entire record, "there is no reasonable probability that the error affected the trial's outcome." See *State v. Preston*, 294 Kan. 27, 36, 272 P.3d 1275 (2012).

Given the quantity and quality of evidence throughout the trial, there is no reasonable probability that any erroneous introduction of J.W.'s testimony affected the trial's outcome. First, a different witness testified—without contemporaneous objection— that Speakman would "get drunk, say mean things to [the victim], call him names, throw money at him," and "would get in his face and he would yell when he was drunk." That same witness testified that Speakman would "start a fight with [the victim]" and that often when she saw Speakman, he was intoxicated. This testimony occurred prior to J.W.'s testimony, so the jury heard testimony like J.W.'s that was not objected to— making J.W.'s testimony less likely to improperly affect the trial's outcome. That witness also testified that the victim had grown "tired of all the drama" with Speakman.

Additionally, there was ample evidence of the events the evening of the incident and Speakman's aggression. Speakman testified that he teased the victim throughout the evening of the incident and that he hit the victim. Eyewitnesses testified that they saw Speakman repeatedly hit the victim when the victim was already on the ground. J.W. testified that on the evening of the incident, Speakman was intoxicated and picking on the

14

victim and would not stop when asked. While the jury may have considered evidence of Speakman's history or tendency to be aggressive in its determination, given the entire record, that evidence did not reasonably sway the jury. Moreover, even using J.W.'s testimony, the State failed to persuade the jury of Speakman's intent to kill the victim.

Finally, the district court provided a broad cautionary instruction that "[e]vidence has been admitted alleging that the defendant committed crimes (bad acts) other than the present crimes charged. It may be considered solely as evidence of the defendant's intent, motive, and knowledge." Jurors are presumed to follow the instructions given, and this court finds no evidence to contradict that presumption. *State v. Kettler*, 299 Kan. 448, 478, 325 P.3d 1075 (2014).

Given the voluminous evidence that Speakman repeatedly hit the victim, causing his death—and that the jury found him guilty of the lesser included crime of reckless involuntary manslaughter rather than intentional murder—this court finds no reasonable probability that any error in admitting evidence of prior bad acts affected the outcome of the trial.

IV.    SPEAKMAN'S KORA CLAIM IS UNPRESERVED

Because he was convicted of a violent crime for killing the victim, Speakman is required to register as an offender under KORA, K.S.A. 2022 Supp. 22-4901 et seq. For the first time on appeal, Speakman argues that KORA violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because it contains a mechanism for certain drug offenders to be relieved of their registration requirement that does not exist for other types of offenders—including him. Speakman concedes that this constitutional argument is raised for the first time on appeal.

15

Generally, this court does not review constitutional arguments raised for the first time on appeal. *State v. Pearce*, 314 Kan. 475, 484, 500 P.3d 528 (2021). However, this general prohibition is diluted by several recognized exceptions under which this court may, at its discretion, review a constitutional argument made for the first time on appeal. See *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 522 (2021). This court may review a constitutional claim seeking reversal when:

> "'[T]he newly asserted claim involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) the claim's consideration is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court's judgment may be upheld on appeal despite its reliance on the wrong ground or reason for its decision.'" *Allen*, 314 Kan. at 283 (quoting *State v. Harris*, 311 Kan. 371, 375, 461 P.3d 48 [2020]).

The party seeking review carries the burden to justify appellate review of an unpreserved constitutional claim. See Kansas Supreme Court Rule 6.02(a)(5) (2023 Kan. S. Ct. R. at 36) ("If the issue was not raised below, there must be an explanation why the issue is properly before the court."). Speakman argues that this court should consider his unpreserved constitutional claim because (1) it involves a pure question of law on undisputed facts that is determinative of the issue, and (2) consideration of the claim is necessary to prevent the denial of fundamental rights. See *Allen*, 314 Kan. at 283.

Not only is this court not convinced that either exception applies, but also—even if they do—its review is also purely prudential. See *State v. Rhoiney*, 314 Kan. 497, 500, 501 P.3d 368 (2021). Speakman broadly asserts a class of all persons who are required to register under KORA, but this court is unpersuaded that no factual development is required to determine the appropriate classification. Additionally, Speakman fails to explain the fundamental right he believes would be impacted by the court's decision. Finally, this court questions the standing and ripeness of this particular issue under these facts. See *FV-I, Inc. v. Kallevig*, 306 Kan. 204, Syl. ¶ 1, 392 P.3d 1248 (2017) (standing

16

is the "right to make a legal claim or seek enforcement of a duty or right"); *KNEA v. State*, 305 Kan. 739, 748, 387 P.3d 795 (2017) (ripeness requirements prevent "courts from being asked to decide ill-defined controversies over constitutional issues or hypothetical or abstract cases"). This court declines to address Speakman's unpreserved constitutional equal protection claim.

CONCLUSION

A jury found Speakman guilty of reckless involuntary manslaughter for killing the victim, and this court finds none of Speakman's challenges to his conviction to require reversal of that decision. In addition to his imprisonment and postrelease supervision, the trial court also ordered Speakman to register as an offender as required by KORA. Speakman's appellate challenge to his KORA registration requirement is not preserved, and this court declines to review it.

Affirmed.