NOT DESIGNATED FOR PUBLICATION

No. 126,215

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LAMARKUS K. GRIGGS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC WILLIAMS, judge. Submitted without oral argument. Opinion filed May 24, 2024. Appeal dismissed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before COBLE, P.J., GREEN, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: Lamarkus Griggs seeks to set aside several convictions arising from a domestic violence incident, arguing the district court erred by admitting hearsay statements of the victim, who did not testify at trial. Griggs contends that out-of-court statements made by the victim to a sexual assault nurse at the hospital were improperly admitted. But improper evidentiary rulings based on hearsay, such as the one raised by Griggs, can be appealed only when an objection is timely made to the specific questions which call for hearsay. Because Griggs failed to make a timely and specific objection to

1

the evidence admitted, we find he failed to preserve the issue for review and dismiss his appeal.

FACTUAL AND PROCEDURAL BACKGROUND

After a violent fight with his girlfriend—referred to under the pseudonym Jane—Lamarkus Griggs was charged with one count of aggravated domestic battery, two counts of domestic battery, one count of robbery, and one count of criminal damage to property. Griggs waived his right to a jury trial, and the district court held a one-day bench trial. Griggs did not testify in his defense, and Jane was not present at trial. Instead, most of the evidence came from the testimony of Jane's friend, who called 911, and from the sexual assault nurse, who observed Jane's injuries and spoke with her at the hospital.

Jane's friend testified at trial that in June 2019, Jane showed up at her house bruised, bleeding, and "hysterically crying." The friend said that, because of previous unreported incidents of domestic violence, she immediately knew that there had been a fight between Griggs and Jane. Jane had "[l]ots of scratches and bruises starting to come up around the chest, the neck, the arms, [and] the face," and the friend called 911 because she was extremely concerned for Jane's safety. After first responders arrived and spoke to Jane, the friend accompanied her to the hospital where she was examined by a sexual assault nurse.

Jane did not appear for trial and did not testify. But the nurse, as part of the sexual assault examination, asked Jane many questions about how she was injured and about the circumstances leading to the incident involving Griggs. At trial, the prosecutor asked the nurse questions about the information she obtained from Jane. In turn, the nurse testified extensively about the facts that Jane relayed regarding the incident involving Griggs. Many if not most of the facts relayed to the district court were hearsay—out-of-court statements Jane made to the nurse which were offered to prove what happened between

2

Jane and Griggs. See K.S.A. 2023 Supp. 60-460(a). The State knew it was soliciting hearsay evidence and informed the court that although Jane had been personally served with a subpoena, she was not present so the State would be relying on the "hearsay rules." Griggs objected to hearsay evidence two times, but no hearsay was testified to in either instance.

Photos of Jane's injuries were taken by the nurse and admitted at trial without objection. The photos showed "red, purple, blue, brown, [and] yellow bruises" on Jane's neck, under her chin, on her jawline, and on her back.

Before publishing the photos to the court, the State asked the nurse what Jane had said caused these injuries. The nurse testified, without objection, that Jane first told her that there had been a "history of chronic strangulation" and that Griggs had last strangled her about a week before, and this incident began when she saw "some stuff on Griggs' phone" that made her realize he was cheating on her. When confronted about what she found on his phone, Griggs began punching her in the head "with a closed fist," and "there was a lot of strangulation that was going on, hitting, and also yelling." Jane said she tried to call 911, but Griggs grabbed the phone and "threw [it] on the ground and broke it." Jane tried to leave through the front door, but Griggs had locked it. She then tried to leave through the kitchen door that led to the garage, but Griggs "grabbed her, began strangling her, and shaking her neck." Jane said Griggs strangled her "numerous times, some of them being with both hands to the front of the neck, and then some being with one hand."

Griggs eventually told Jane that she could leave, but as Jane was walking out the door, Griggs "kicked her in the back." The struggle continued outside. Griggs grabbed Jane's car keys from her, but she was able to wrestle them back, get into her car, and escape. Jane then drove to her friend's house, and her friend called 911. The line of questioning by the State about Jane's statements to the nurse continued without objection

3

until the nurse had testified at length and in detail about what Jane told her Griggs had done that night.

The district court ultimately found Griggs guilty as charged and sentenced him to a controlling 21-month prison term and placed him on probation. Griggs appeals.

DISCUSSION

Griggs' sole argument on appeal is that the district court erred in admitting Jane's out-of-court statements through the nurse's testimony because those statements were hearsay and did not fall under the hearsay exception that the prosecution relied upon—K.S.A. 2023 Supp. 60-460(l)(2), a hearsay exception which allows some statements made to a physician in the course of treatment to be admitted. Griggs argues the exception does not apply since the nurse who testified was not a physician. But we are precluded from addressing the merits of Griggs' claim because he failed to preserve the issue for appeal.

K.S.A. 60-404 requires a party to "'make a specific and timely objection at trial in order to preserve evidentiary issues for appeal.'" *State v. Brown*, 307 Kan. 641, 645, 413 P.3d 783 (2018). K.S.A. 60-404 provides:

> "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence *unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection*." (Emphasis added.)

The purpose of this requirement is "to allow the district court to act as an evidentiary gatekeeper at trial—to rule on the admissibility of evidence based on specific arguments raised at trial, with the context of other evidence and testimony presented." *State v. Bliss*, 61 Kan. App. 2d 76, 92, 498 P.3d 1220 (2021), *rev. denied* 314 Kan. 856 (2022). Put simply, a party must first give "the district court an opportunity to rule on" a

4

specific claim before the party can make that argument on appeal. *State v. Scheetz*, 318 Kan. 48, 58, 541 P.3d 79 (2024).

While the Legislature has created some exceptions to K.S.A. 60-404 in some nonevidentiary contexts, "'K.S.A. 60-404 does not allow those exceptions to come into play in the context of the admissibility of evidence.'" *Scheetz*, 318 Kan. at 59. Our Supreme Court has emphasized that "[p]reserving an evidentiary challenge under K.S.A. 60-404 requires a timely and specific objection. It is not optional." 318 Kan. at 59. Thus, the failure to raise a timely and specific objection to the admission of evidence at trial acts as "an absolute bar" to appellate review. *Bliss*, 61 Kan. App. 2d at 96 (citing *State v. Carter*, 312 Kan. 526, 535, 477 P.3d 1004 [2020]). Accordingly, appellate courts strictly police this rule. See *State v. Lowery*, 308 Kan. 1183, 1196, 427 P.3d 865 (2018).

Griggs made only two objections during the nurse's testimony, neither of which is sufficient to preserve his hearsay argument for appeal. Griggs' first hearsay objection was lodged when the State asked the nurse, "Did [Jane] tell you what the relationship was with Lamarkus Griggs?" Griggs objected on hearsay grounds, and the prosecutor responded that the testimony "went towards medical diagnosis for future treatment." After the court overruled Griggs' hearsay objection, the nurse did not answer the question nor did the State repeat it. Instead, the State asked a different question, to which there was no objection. Thus, no inadmissible hearsay was injected into this case over Griggs' first objection.

Griggs' second objection was made shortly thereafter. The State asked the nurse, "You would then take the information [gathered from Jane] and pass it along to who?" Griggs then objected to relevance. As Griggs was fleshing out this objection, he complained that the State was trying to "back door a missing person's testimony." But even if Griggs' objection is generously interpreted as grounded in both relevance and hearsay, we still find this objection was insufficient to preserve the evidentiary argument

5

he now makes on appeal. We see nothing in the question that injects hearsay testimony into the case. We find the district court correctly overruled any hearsay objection. Significantly, after the court overruled this second hearsay objection, Griggs did not lodge any other objections during the rest of the nurse's testimony.

While we agree hearsay evidence was introduced, as the transcript reflects, Griggs did not timely object to any of the questions asked or the ensuing testimony. Thus, the evidence that Griggs now challenges was admitted without a timely and contemporaneous objection required by K.S.A. 60-404. Griggs' challenge to the admission of Jane's out-of-court statements was not preserved for appellate review and we are precluded from addressing it.

Appeal dismissed.