NOT DESIGNATED FOR PUBLICATION

No. 124,221

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

THOMAS ORVILLE MCLAUGHLIN II,
*Appellant*.

MEMORANDUM OPINION

Appeal from Jackson District Court; NORBERT C. MAREK JR., judge. Submitted without oral argument. Opinion filed June 21, 2024. Affirmed.

*Allen A. Ternent*, of Ternent Law Office, of Atchison, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before ISHERWOOD, P.J., GREEN and PICKERING, JJ.

PICKERING, J.:  This is the direct appeal from Thomas Orville McLaughlin II's jury trial, in which he was convicted of committing a fraudulent insurance act, making a false information, and interfering with law enforcement. He raises two evidentiary challenges: first, claiming several of the State's exhibits were improperly admitted and second, that a defense witness was improperly excluded. For the first time on appeal, he raises two issues asserting his defense counsel was ineffective. After review, we are not persuaded by his arguments and affirm his convictions.

1

MCLAUGHLIN REPORTS A HOME BURGLARY AND IS LATER CONVICTED

On August 2, 2016, Thomas McLaughlin reported a burglary. He contacted law enforcement and later spoke to Officer Travis Debarge about the burglary. McLaughlin advised the officer that his storage container had been robbed and three ATVs were missing. The following day, McLaughlin also spoke to Detective Mark Montague about the burglary at his residence. During their conversation, McLaughlin presented the detective with a list of stolen items, including tools, TVs, guns, and jewelry. At trial, the State presented photographs that showed McLaughlin moving a TV and other items out of his house the night before the alleged burglary.

McLaughlin also reported the burglary and the stolen items, particularly the ATVs, to his insurance company. He sought to be reimbursed and made a claim against the policy that he had just purchased the prior month, on July 15, 2016. When McLaughlin opened the policy, the insurance agent, Bryce Hundley, gathered details about each insured ATV, including the make, model, VIN number, and the approximate value.

In making his insurance claim, McLaughlin was required to provide documentation of the ATVs' purchase. At first, McLaughlin claimed that he could not find the documents but then later provided the documents. Because of McLaughlin's earlier adamant claims that the documents could not be found, the sudden production of the purchase documents raised the insurance company's suspicions of McLaughlin. At trial, Melissa Webber from Progressive testified about McLaughlin's inconsistent statements, noting how, at first, McLaughlin said that he did not have one of the ATV titles. He had claimed that the titles and bills of sale for the ATVS were not available because they were kept in a safe that was later reported stolen. Yet in the same interview, McLaughlin told Webber that the title was destroyed in a house fire a year prior. Webber had recorded her conversations with McLaughlin. The recording was played at the trial.

At trial, McLaughlin's now ex-wife (they were married in 2016), Skye Gaskell, testified about McLaughlin's and her actions toward defrauding the insurance company. She testified of following McLaughlin's directions and falsifying documents in the false insurance claim. Her trial testimony also included admitting that she had lied to the insurance investigators both in their initial investigation and during her sworn statements taken in her deposition. As for her marriage to McLaughlin, Gaskell admitted that her interest in McLaughlin was only for obtaining his money and that she had a boyfriend, Chris Inglet, throughout their marriage. The jury also heard evidence that Gaskell still possessed some of the reportedly stolen tools from the alleged burglary.

During Gaskell's testimony, the State admitted a short recording of McLaughlin talking with Inglet. The recording lasted about 1 minute and 13 seconds. Gaskell identified both of their voices. The recorded conversation included McLaughlin discussing his earlier statements to Gaskell:

> "[L]ook[,] you help me with this insurance thing. I said, Skye, I didn't get into this mess by myself. You were a big percentage of it. Helping me, you know scamming me of money, lying to me whatever, that's over. The fact is we gotta pay that money back. This is the only way I know how to pay it back. And you gotta help me get it paid back. Well, she then takes off."

Later in the recording, McLaughlin stated, "She gonna get a free car out of this if she'd help me. Her car's gonna get paid off. I'll teach her that. Don't fucking lie to nobody. Yeah, you gotta lie to insurance companies. In business. To get by."

Gaskell admitted that she, too, had been charged with crimes similar to McLaughlin's charges. She stated her hope was that her trial testimony would help to resolve her charges favorably. She also admitted having prior convictions for criminal use of a financial card and theft.

The State's case focused on McLaughlin's false claims to owning the three ATVs that he had insured. Two of the State's witnesses—Hundley and Montague—both testified that it was McLaughlin who submitted the false documents. And it was McLaughlin who purchased the insurance for the ATVs. For each of the three ATVs, the State showed how the ATVs were not owned by McLaughlin during the period that he had claimed and presented evidence of McLauglin's actions towards his claimed ownership.

For the 2006 Yamaha Kodiak ATV, McLaughlin first told Webber that he bought the ATV in 2007 or 2008 from a person living in Manhattan, Kansas, at the time. The jury heard this through their recorded conversation. The State also presented evidence that later a bill of sale for the ATV was provided to Progressive. McLaughlin had now claimed that another person, Clare Walton, had sold the ATV to McLaughlin in 2014. In support, McLaughlin provided a check in the amount of $8,000 from his bank.

This claim, however, was refuted by Walton's daughter, Caroline Meyers. She testified how, due to his ill health, her father did not engage in business activities starting in 2006 until his death in 2016. Walton was not handling any of his business affairs and did not sell an ATV during the time McLaughlin claimed Walton sold him the ATV. Meyers also testified that she never received the $8,000 check from McLaughlin to purchase the ATV and that Walton's alleged signature on the ATV's bill of sale did not match her father's signature. The State also presented evidence that the bank account from which the check allegedly had issued had been closed before the claimed sale date. And the bank records showed that there were no attempts to honor the check.

The State also pointed out McLaughlin's inconsistent statements. He first told the insurance company that he could not verify the ATV's purchase because the bills of sale were all in the safe that was stolen in the burglary. When the documents were produced, he said he got them from his tax lady, but when asked to provide her contact information,

4

he failed to do so. Police determined that the Kodiak ATV was sold on the PurpleWave auction site in February 2016, and that same purchaser registered the ATV in March 2016.

Finally, Gaskell provided additional information about McLaughlin's ownership claim of the ATV. She testified that McLaughlin never owned this ATV. Rather, when they decided to report the ATV as stolen, they did not believe they would have to provide documentation to obtain insurance money for it. She admitted writing the seller's information on the bill of sale. She also testified that the list of missing items was written in McLaughlin's handwriting and that McLaughlin had written out the check allegedly used to pay Walton for the ATV.

For the 2007 Suzuki Quadracer ATV, McLaughlin at first told Webber he purchased the ATV at Harris Auction in Holton, Kansas. He did not, however, provide any documentation regarding ownership to the insurance company. He claimed that he had purchased the ATV about 90 days to 4 months before the burglary. In contrast, Gaskell initially told the insurance company the ATV belonged to her before her marriage to McLaughlin. In later statements to law enforcement, she admitted to never owning the ATV, but that she and McLaughlin had acquired pictures of the ATV through an online search. The investigation later determined that the Quadracer was sold on an auction site on August 24, 2011, in Missouri.

For the 2004 Yamaha Raptor, McLaughlin at first told Webber the ATV had been purchased before the burglary, estimating the purchase took place about 90 days to 4 months before the burglary. McLaughlin provided the insurance company with a receipt claiming to show the purchase of the Raptor on June 5, 2013, despite his initial claims that documentation related to the ATV was in a safe stolen from his home. Gaskell admitted writing the receipt in 2016. Although Gaskell told the insurance company that she got the ATV in 2004 from her father's friend, she later admitted to police that she

5

never owned the ATV. She also admitted that she and McLaughlin conducted a Google online search for photos of this specific type of ATV.

Police later determined that the Kansas Department of Revenue owned the ATV in October 2013, based on a tax seizure. The ATV was then sold on the PurpleWave auction site on November 1, 2013. That purchaser still owned the ATV in 2018.

*McLaughlin's defense evidence*

Annalise Floury testified that she worked at Golden Eagle Casino with Gaskell in 2015 or 2016. During that time, Gaskell married McLaughlin. Floury testified that Gaskell "made the comment that she was going to stay with him for a couple of years, then she was going to divorce him and take him for everything he had."

Robert Tindell testified that he knew McLaughlin for 20-some years. He said that in 2015, 2016, or maybe 2007 or 2008, McLaughlin picked up an ATV from Walton, and Tindell helped him move it. He did not identify the ATV as one reported stolen in 2016. He also testified that he saw Gaskell dealing cards at Prairie Band Casino while she was married to McLaughlin, but she was flirting with Inglet. He saw Gaskell and Inglet together again at the Golden Eagle Casino, and Gaskell told Tindell that she never loved McLaughlin, but "used him for what [she] could get."

Clarence Hawk, McLaughlin's half-brother, testified that the McLaughlin family "[b]ought, and sold, and traded a lot of things over the years" with the Walton family. Hawk said that McLaughlin bought an ATV from Walton in the 1990s. He testified that McLaughlin bought another ATV from Walton between 2007 and 2010. He did not identify the ATV by make, model, or year. A photo of a green four-wheeler was admitted into evidence. It was not one of the three involved in the insurance claim. Hawk testified that he remembered seeing at least three ATVs at McLaughlin's house on July 4, 2016,

6

which would have been the month before the alleged burglary. Finally, he testified that McLaughlin hired him to repair the doors on the storage containers that were damaged in the alleged burglary. He said that he was paid for the work and that he gave McLaughlin a receipt. He admitted on cross-examination that the receipt was issued so that McLaughlin could receive reimbursement from insurance.

Katherine Smith, McLaughlin's half-sister, testified that her family had a long history of trading and buying farm machinery and livestock from the Waltons. She testified to seeing ATVs at McLaughlin's house in the past. She testified that McLaughlin bought an ATV from Walton around 2010. She did not identify it as one of the ATVs involved in the insurance claim.

McLaughlin's mother, Susan Nieman, testified that she had seen ATVs at McLaughlin's house over the years. She saw four ATVs at McLaughlin's house on July 4, 2016, just a month before the alleged burglary. She corroborated testimony that McLaughlin removed a TV from his home the night before he reported it stolen to police. She testified that she was present when the picture of McLaughlin moving the TV out of his house was taken. She said that he was taking it to his dad and stepmom's.

McLaughlin's father, Thomas McLaughlin Sr., testified he had a long history with the Walton family. McLaughlin Sr. testified that McLaughlin bought two ATVs from Walton. He did not identify them by make or model. McLaughlin's stepmother, Evelyn McLaughlin, testified that she witnessed McLaughlin purchase an ATV from Walton sometime between 2008 and 2010. She did not identify it as one involved in the insurance claim.

As part of McLaughlin's theory of defense, he sought to introduce the testimony of Lauren Benish, one of Gaskell's boyfriends. McLaughlin's theory was that Gaskell was the sole perpetrator in this series of crimes. Benish would testify about his prior romantic

relationship with Gaskell and how she had conspired with her boyfriend, Inglet, to steal from him and commit fraud. The district court denied the proposed defense witness's testimony.

The jury convicted McLaughlin of committing a fraudulent insurance act, making false information (for the bill of sale for the 2006 Yamaha Kodiak), and interference with law enforcement. He was sentenced to 12 months in jail, suspended for 24 months of probation.

On June 4, 2021, McLaughlin filed a notice of appeal. The appeal was docketed on August 3, 2021. Several months later, on May 19, 2022, McLaughlin filed an affidavit in the district court attesting that his defense counsel refused to call him as a witness despite his desire to testify on his own behalf. As the case had been docketed with the appellate clerk's office, no action was taken regarding his affidavit at the district court level.

MCLAUGHLIN RAISES FOUR ISSUES ON APPEAL

I.      THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ADMITTING SEVEN OF THE STATE'S EXHIBITS

To begin, our review of the admission of evidence "involves several legal considerations:  determining relevance; identifying and applying legal principles including rules of evidence; and weighing prejudice against probative value." *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021).

Admission of a hearsay statement is reviewed for abuse of discretion. *State v. Evans*, 313 Kan. 972, 983, 492 P.3d 418 (2021). A court's consideration of the admissibility of evidence can also require application of statutory rules controlling the

admission and exclusion of certain types of evidence. Whether a particular legal principle or statutory rule governs the admission of particular evidence is a question of law subject to de novo review. *State v. Miller*, 308 Kan. 1119, 1166-67, 427 P.3d 907 (2018). An appellate court also exercises de novo review of a challenge to the adequacy of the legal basis of a district judge's decision on admission or exclusion of evidence. *State v. Brown*, 307 Kan. 641, 644, 413 P.3d 783 (2018).

*We Review McLaughlin's Challenges to the Admitted State Evidence*

A.      *State's Exhibit 3, McLaughlin's list of allegedly stolen items*

The day after the burglary, McLaughlin handed detectives a list of allegedly stolen items. This list became State's Exhibit 3. At trial McLaughlin lodged a hearsay objection to its admission. On appeal, he also asserts the State failed to provide foundation and, thus, the exhibit should not have been admitted.

The issue of whether evidentiary foundation requirements have been met is reviewed for abuse of discretion. *State v. Jenkins*, 311 Kan. 39, 45, 455 P.3d 779 (2020). K.S.A. 60-404 generally precludes an appellate court from reviewing an evidentiary challenge absent a timely and specific objection made on the record. See *State v. Ballou*, 310 Kan. 591, 613-14, 448 P.3d 479 (2019). A party may not object at trial to the admission of evidence on one ground and then on appeal argue a different ground. *State v. George*, 311 Kan. 693, 701, 466 P.3d 469 (2020). For that reason, we will not address McLaughlin's foundation challenge. We turn now to McLaughlin's argument that Exhibit 3 was a hearsay statement.

Under Kansas law, hearsay is "[e]vidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated." K.S.A. 2023 Supp. 60-460; *State v. Sinnard*, 318 Kan. 261, 287, 543 P.3d 525

(2024). """The theory behind the hearsay rule is that when a statement is offered as evidence of the truth of the matter stated, the credibility of the declarant is the basis for its reliability, and the declarant must therefore be subject to cross-examination.""" 318 Kan. at 287. As our Supreme Court explained: "It may be conceded that where an extrajudicial statement is offered merely to show the fact of its having been made, it is admissible when testified to by a person who heard it." *State v. Oliphant*, 210 Kan. 451, 454, 502 P.2d 626 (1972). Under this principle, a written statement offered to show the fact of its having been made is admissible when testified to by a person who received the writing. On the other hand, "[i]f an out-of-court statement is offered for some reason other than to prove the truth of the matter stated, it is not hearsay." *Evans*, 313 Kan. at 984.

At trial, the State offered Exhibit 3 to prove that McLaughlin submitted a list of purportedly stolen items to police. As the State explained to the jury, the exhibit showed McLaughlin's intent to mislead law enforcement and support his false insurance claim. The list of allegedly stolen items was offered only to prove that the list was made, not to establish the truth that the items were stolen.

In support of its case against McLaughlin, the State moved to admit Exhibit 3 to show McLaughlin's false statements to prove, among other things, his intent. The State correctly points out that the statements in the document were false. As such, they were not offered to prove the truth of the matter stated but merely that the statements were made. Because Exhibit 3 was not an out-of-court statement offered to prove the truth of the matter stated, the district court did not abuse its discretion in admitting Exhibit 3.

B.    *State's Exhibit 6, McLaughlin's check purportedly to purchase the 2006 Yamaha*

State's Exhibit 6 is the check that McLaughlin presented to support his claim that he purchased the 2006 Yahama from Walton for $8,000. McLaughlin objected at trial on the bases of lack of foundation and hearsay. On appeal, he again argues both a lack of foundation and hearsay.

"'The question of whether evidentiary foundation requirements have been met is left largely to the discretion of the district court. Under an abuse of discretion standard, an appellate court will not disturb a district court's decision unless no reasonable person would have taken the same view. [Citations omitted.]'" *Jenkins*, 311 Kan. at 45.

"Foundation refers to '"preliminary questions designed to establish that evidence is admissible."' Providing an adequate foundation prevents the finder of fact from being exposed to inadmissible evidence. [Citations omitted.]" *State v. Banks*, 306 Kan. 854, 866, 397 P.3d 1195 (2017). Counsel is therefore required to lay a foundation before an exhibit can be admitted into evidence. No evidentiary statute requires foundation for documents or other exhibits.

McLaughlin asserts that the State neglected to elicit "basic foundation testimony" such as "how the document had been received, from whom the document was received, from where the document was received, who created the document, when the document was received or any information to supports its authenticity or veracity." In the State's attempt to have Exhibit 6 admitted into evidence, the following foundational testimony was presented during the direct examination of Hundley, the independent insurance agent whom McLaughlin used to procure insurance on the ATVs:

11

"Q.     All right. Now, let's jump back to August of 2016. At some point, did you become aware that Mr. McLaughlin was needing to provide some documents—specifically, let's talk about to Progressive—about these ATVs?

"A.     At what time?

"Q.     At some time, did you become aware that—

"A.     Yes. He needed further documentation to prove that these four-wheelers or ATVs were owned.

"Q.     So do you recall him at some point delivering some documents to you?

"A.     Yes.

. . . .

"Q.     And flip to section six. This is State's Exhibit 6. Are you familiar with that document?

"A.     Yes.

"Q.     What is that?

"A.     This is just a copy of the check for the 2006 Yamaha.

. . . .

"Q.     Okay. And so how is it that you're familiar with those three documents?

"A.     They were provided to me from Mr. McLaughlin.

"Q.     Okay. Do you recall how they were provided to you? E-mail? In person?

"A.     I believe all of them were e-mail.

. . . .

"Q.     After you testified at that previous hearing, what did you go back to your office and do?

"A.     I went back to the office and found that [the check] was one of the original three documents turned in for proof of ownership.

. . . .

"Q.     . . . State's Exhibit 6, this check, you have previously testified, is part of your business file related to Mr. McLaughlin's case; is that accurate?

"A.     That's correct.

"Q.     Is this a true and accurate representation of the check that's actually contained in your business file?

"A.     It is."

The parties discussed on the record a possible stipulation concerning the fact that Hundley was later unable to find an email from McLaughlin containing the check (and receipt and bill of sale). Despite discussing a stipulation, one was never read to the jury, and none appears as an exhibit by either party. The record therefore does not reflect the exact nature of the stipulation.

Here, the State provided foundation, through Hundley's testimony, that McLaughlin delivered the check to Hundley after the insurance claim was filed.

As for the hearsay argument, again the State asserts that the check that McLaughlin presented was to support his false claim that he had bought the 2006 Yamaha ATV. Yet the check was not offered for the truth of the matters it asserted—it was offered only to prove the fact that McLaughlin delivered it to Hundley in support of his insurance claim and to show McLaughlin's attempt to deceive others as to the staged burglary. Because the exhibit was not presented for the truth of the matter stated, McLaughlin's hearsay argument fails. See *Evans*, 313 Kan. at 984. The district court did not abuse its discretion in admitting Exhibit 6.

C.     *State's Exhibit 7, receipt falsely showing payment for 2004 Yamaha*

State's Exhibit 7 is the receipt showing Gaskell allegedly paid Smith $2,500 for the 2004 Yamaha. McLaughlin objected at trial on the bases of lack of foundation and hearsay. On appeal, he argues only a lack of foundation. Thus, we need not address his hearsay claim. *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021) (issue not briefed deemed waived).

McLaughlin contends that "the State neglected to elicit basic foundation testimony from Mr. Hundley." We disagree. Through Hundley's testimony, the State provided foundation that McLaughlin delivered the receipt to Hundley after the insurance claim

was filed. Because the receipt was not offered for the truth of the matter but was offered to prove the fact that McLaughlin delivered it to Hundley, its authenticity or veracity is not at issue. Therefore, the foundation laid through Hundley's testimony—that McLaughlin delivered the receipt to him after the claim was filed—was sufficient for foundation purposes. In other words, what matters for foundation purposes was that McLaughlin delivered the alleged receipt, which the State established through its foundation questions presented to Hundley. See *Oliphant*, 210 Kan. at 454. The district court did not abuse its discretion in admitting Exhibit 7.

D. *State's Exhibit 14, an affidavit of Bryce Hundley*

State's Exhibit 14 is an affidavit of custodian of business records signed by Hundley. Exhibits 14.1 through 14.35 are 35 pages that constituted Hundley's insurance file on the ATVs. McLaughlin lodged a hearsay objection to the admission at trial of Exhibits 14, 14.22 (the bill of sale purporting to transfer the 2006 Yamaha from Walton to McLaughlin), 14.23 (the same as Exhibit 6—the check made out to Walton for $8,000 for the alleged purpose of buying the 2006 Yamaha), and 14.24 (the same as Exhibit 7— the receipt showing Gaskell allegedly paid Steve Smith $2,500 for the 2004 Yamaha). On appeal, he challenges all 36 documents and asserts a lack of foundation.

Because McLaughlin's only objection at trial was hearsay, we decline to address this issue. See *George*, 311 Kan. at 701.

E. *State's Exhibit 21, an affidavit, and State's Exhibit 22, a 29-page bank statement*

State's Exhibit 21 is an affidavit of custodian of business records signed by Tad Ruliffson for the Leonardville State Bank. At trial, McLaughlin objected based on lack of foundation, chain of custody issues, and a confrontation clause violation. On appeal, he

asserts only lack of foundation and noncompliance with K.S.A. 2023 Supp. 60-245, which sets out requirements for subpoenas.

State's Exhibit 22 is a 29-page bank statement. McLaughlin lodged a hearsay objection at trial and an objection that the documents were not produced in accordance with K.S.A. 2023 Supp. 60-245. The statement was admitted as a business records exception to the hearsay rule. On appeal, he asserts lack of foundation and noncompliance with K.S.A. 2023 Supp. 60-245.

The State concedes that because Exhibits 21 and 22 were obtained through a search warrant and admitted through law enforcement testimony, they do not comply with K.S.A. 2023 Supp. 60-245a, which sets out the requirements for the subpoena of nonparty business records. A records custodian did not testify. Thus, the admission of these exhibits did not comply with K.S.A. 2023 Supp. 60-460(m), which sets forth the business records exception to the hearsay rule. When strictly construing the statutes, it appears that these exhibits should not have been admitted.

The erroneous admission of evidence is subject to review for harmless error under K.S.A. 2023 Supp. 60-261. *Sinnard*, 318 Kan. at 289. Where an error implicates a statutory but not a federal constitutional right, the party benefiting from the error must persuade the court that there is no reasonable probability that the error affected the trial's outcome in light of the entire record for the error to be deemed harmless. *State v. McCullough*, 293 Kan. 970, 983, 270 P.3d 1142 (2012).

Exhibit 21 (the affidavit) was used to admit Exhibit 22 (the bank statement), which was used to prove that the bank account for the check purported to buy the 2006 Yamaha Kodiak was closed before the check was written. Neither exhibit was necessary because there was ample other evidence that the check was false. Walton's daughter, who served as his durable power of attorney and conservator in 2014, testified that she never received

15

the check. The signature on the corresponding bill of sale in Exhibit 5 was not Walton's. And finally, the circumstances of the appearance of a check were suspicious because McLaughlin originally claimed he lost all documentation in a house fire and that it was stolen in the burglary. But he later said he got it from his tax lady, whose contact information he refused to provide. There is therefore no reasonable probability that admission of the bank statement and affidavit affected the trial's outcome. Any error in admitting Exhibits 21 and 22 was harmless.

F. *State's Exhibit 26, a recorded conversation between McLaughlin and Inglet*

State's Exhibit 26 is a recording of a conversation between McLaughlin and Inglet. At trial, McLaughlin objected to lack of foundation and hearsay. On appeal, he again argues lack of foundation and hearsay. McLaughlin asserts that the State failed to obtain basic foundation information from its witness. But he acknowledges that Gaskell identified the voices on the recording and testified that Inglet sent the recording to her phone. The State elicited the following foundation testimony from Gaskell:

"Q. And that recording that you reviewed, are you familiar with the voices that are in that recording?
"A. Yes.
"Q. Whose voice do you hear in that recording?
"A. So it's Chris Inglet and Tom McLaughlin.
"Q. And how is it that that recording ended up on your phone?
"A. Chris sent it to me.
"Q. So that is a recording that was contained on your phone?
"A. Yes."

As stated above, whether evidentiary foundation requirements have been met is reviewed for abuse of discretion. *Jenkins*, 311 Kan. at 45. Our Supreme Court has held that audio recordings qualify as "'writings'" under Kansas' Rules of Evidence, K.S.A. 60-

16

401 et seq. *Jenkins*, 311 Kan. at 50. K.S.A. 2023 Supp. 60-464 requires authentication of a writing before it may be received in evidence. The *Jenkins* court cited with approval *State v. Robinson*, 303 Kan. 11, 225, 363 P.3d 875 (2015), which "interpreted K.S.A. 60-464 and held that its 'authentication requirement is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."' The burden of authentication is 'minimal' or 'slight,' and . . . 'indirect or circumstantial evidence"' is enough. [Citations omitted.] *Jenkins*, 311 Kan. at 50-51.

In this case, the State offered enough evidence on which a reasonable juror could conclude that McLaughlin made the statements on the recording. Gaskell, his former wife, identified his voice. The speaker in the recording mentioned wanting Gaskell's help with an "insurance thing," and Gaskell's prior testimony established that McLaughlin was pressuring her to help him defraud the insurance company. On this record, the district court did not abuse its discretion by admitting the recording.

McLaughlin asserts that Exhibit 26 also contained hearsay, but he does not explain why his own statements constituted hearsay. McLaughlin's statements were properly admitted under K.S.A. 2023 Supp. 60-460(g) (admissions by parties) and (j) (declarations against interest).

McLaughlin has failed to present any error in the admission of the State's Exhibits 3, 6, 7, 14, 14.22, 21, 22, and 26. The district court did not abuse its discretion in admitting the State's exhibits.

II.     THE DISTRICT COURT DID NOT ERR IN EXCLUDING A DEFENSE WITNESS

For his second issue, McLaughlin argues that the district court's denial of his request to call Lauren Benish to testify was error and thereby denied his right to present his theory of defense.

17

*Standard of Review*

We apply a multistep analysis of decisions to admit or exclude evidence. "Under this multistep analysis, the first question is relevance. K.S.A. 60-401(b) defines relevant evidence as evidence that is probative and material. On appeal, the question of whether evidence is probative is judged under an abuse of discretion standard; materiality is judged under a de novo standard." *State v. Robinson*, 306 Kan. 431, 435-36, 394 P.3d 868 (2017). Our review of whether a defendant's right to present a defense is violated is de novo. *State v. Olsman*, 58 Kan. App. 2d 638, 655, 473 P.3d 937 (2020).

*McLaughlin's Theory of Defense*

According to McLaughlin, his theory of defense was that he, like Benish, was the victim of a conspiracy between Gaskell and Inglet to steal from and defraud him. He alleges that Gaskell created the false documents without his knowledge and, unbeknownst to McLaughlin, Gaskell engineered the burglary of his home. Importantly, McLaughlin did not seek to present evidence that Gaskell or others committed the crimes for which he was convicted: committing a fraudulent insurance act, making false information with law enforcement, and interference with law enforcement based on a faked burglary. Despite this, McLaughlin asserts that his "convictions rest squarely and *solely* on the unchallenged testimony of Skye Gaskell." (Emphasis added.)

At the district court, McLaughlin proffered the following:

"[W]e have already been presented with evidence before this Court that [Gaskell] has a history of dating or becoming engaged with or marrying older gentlemen for financial purposes. . . .

　　　. . . .

　　　"Our contention is that [Gaskell], having a boyfriend, the two of them—and there's been evidence that the two of them utilized the men in [Gaskell's] relationship for

18

financial benefit—that the two of them worked to rob the house together. They thought that [Inglet] was [Gaskell's] cousin. . . .

    . . . .

[Gaskell] told everybody [Inglet] is my cousin, and that cousin and [Gaskell] were working to deprive people that [Gaskell] was in a relationship of their property . . . .

    . . . .

"Mr. Benish has independent testimony in this case in which he's going to testify that [Gaskell] told him that she had four-wheelers that she was going to be bringing out, and [Gaskell] told him that she had all of these weapons and that [Gaskell] made additional comments about certain property that is alleged to have not . . . been stolen.

    . . . .

    "Ultimately, if we can present that these two were working together to pick [Gaskell] up in a hotel and take property from a gentleman she's in a romantic relationship with using the same excuse, there's a similarity with regard to the victims, the sex of the victims, the age of the victims. There's a similarity with regard to the conduct involved in taking them to a hotel. There's a similarity in the conduct as to the excuse for why they needed to leave. There's a similarity in her relationship with the gentleman, which is for financial purposes. There's a similarity in that she was actually in a relationship with [Inglet] and telling each of them the same lie as to who [Inglet] was, which was my cousin. So based on those facts, Judge, we believe that the circumstances are strikingly similar.

    . . . .

"[O]ur defense is—and if true that [Gaskell] and [Inglet] actually committed a burglary at [McLaughlin's] house, he would be found not guilty. . . ."

*The District Court Did Not Err in Denying McLaughlin's Proffered Evidence*

We begin our analysis by determining whether the district court erred in excluding the evidence. "[T]he excluded evidence supporting the defense theory must be relevant, admissible, and noncumulative." *Robinson*, 306 Kan. at 436.

19

The defendant's right to present evidence in support of a defense is subject to certain restraints, including that the evidence must be relevant. See *State v. Jones*, 287 Kan. 547, 555, 198 P.3d 756 (2008). "'Relevant evidence' [is] evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b). In other words, relevant evidence has both "materiality and probative value." *State v. Hilt*, 299 Kan. 176, 189, 322 P.3d 367 (2014). "Material evidence tends to establish a fact that is at issue and is significant under the substantive law of the case. Probative evidence requires only a logical connection between the asserted fact and the inference it is intended to establish." *Robinson*, 306 Kan. at 436.

McLaughlin incorrectly contends that "[t]he entirety of the State's case" rested on the "unsupported allegations" of Gaskell. McLaughlin contends that it was through Benish's testimony that he could challenge Gaskell. Yet the State's evidence against McLaughlin does not support this claim. Both Hundley and Montague testified that McLaughlin submitted the false documents. And in support of the crime of committing a fraudulent insurance act, it was McLaughlin who purchased the insurance for the ATVs. It was McLaughlin's mother who corroborated testimony that McLaughlin removed a TV from his home the night before he reported it stolen to police.

McLaughlin further asserts Gaskell was the actual perpetrator, and she and Inglet "had done nearly the same thing" to Benish. But burglarizing Benish's home while he was in a hotel room is not the same thing that happened here. In this case, Gaskell's testimony was that McLaughlin left the hotel before she did. And it was McLaughlin who reported to police when he called in the burglary that his wife was still in Kansas City.

The district court's exclusion of this evidence was based on lack of relevance. In denying defense counsel's proffer of Benish's testimony, the court stated, "This is an insurance fraud case, and so I'm not going to let Mr. Benish testify." The court further stated, "This case isn't about Ms. Gaskell's sexual morals or lack thereof."

20

The only questions are whether McLaughlin made an insurance claim knowing it contained materially false information; whether he knowingly generated a fraudulent bill of sale; and whether he knowingly reported false information to law enforcement. McLaughlin did not seek to present evidence that Gaskell or others committed the crimes of fraudulent insurance act, making false information with law enforcement, and interference with law enforcement based on a faked burglary. Even if the defense had succeeded in introducing evidence that Gaskell burglarized Benish's home, that would have had no bearing on whether McLaughlin bought insurance for ATVs he never owned, filed an insurance claim for the loss of ATVs he never owned, reported a theft to law enforcement of ATVs he never owned, and created a bill of sale for an ATV he never purchased. The district court therefore did not err in excluding the proffered evidence because it was not relevant.

The State also suggests that the evidence would not have been admitted because of the limitations found under K.S.A. 2023 Supp. 60-455, which prohibits evidence of a crime on another "specified occasion." The State summarizes McLaughlin's evidence that "Gaskell and Inglet conspired to burglarize another person's home with whom Gaskell was romantically linked" and claims this was not error because this was K.S.A. 2023 Supp. 60-455 evidence. McLaughlin wanted to present evidence of *different crimes* Gaskell committed on a *different specified occasion*. While K.S.A. 2023 Supp. 60-455 has exceptions such as plan or motive, McLaughlin does not argue that any of them apply here. Nor did McLaughlin respond to the State's position that the evidence was inadmissible under K.S.A. 2023 Supp. 60-455.

The evidence that McLaughlin sought to introduce was not relevant, and we find the district court did not commit error in excluding the evidence.

21

III.    WE DECLINE TO REVIEW A CLAIM FOR THE FIRST TIME ON APPEAL REGARDING
        TRIAL COUNSEL'S INEFFECTIVENESS

McLaughlin argues, for the first time on appeal, that his trial counsel was ineffective when the State had several of its exhibits admitted at trial. Specifically, he asserts that his counsel failed to voir dire the witnesses to demonstrate the deficiencies in foundation for admission of State's Exhibits 3, 6, 7, 14, 21, 22, and 26; and that counsel failed to review the recordings in Exhibits 24 and 26 before their admission.

The State contends that McLaughlin's counsel "engaged in a thorough defense on behalf of McLaughlin." It also argues that this case is not one of the "'extremely rare'" cases considered in *State v. Hilyard*, 316 Kan. 326, 338, 515 P.3d 267 (2022). In *Hilyard*, the Kansas Supreme Court noted the "usual course" of appellate counsel is requesting a remand to the district court for a "'*Van Cleave*'" evidentiary hearing. 316 Kan. at 338; see *State v. Van Cleave*, 239 Kan. 117, 120, 716 P.2d 580 (1986). And thus, because of the fact-intensive inquiry required for resolving an allegation of ineffectiveness of counsel, there are "'extremely rare'" times when such a claim could be resolved for the first time on direct appeal. 316 Kan. at 338; see *State v. Carter*, 270 Kan. 426, 440, 14 P.3d 1138 (2000) ("The record on appeal is sufficient for this court to consider Carter's constitutional claims, including ineffective assistance of counsel.").

Preliminarily, McLaughlin did not make this argument before the district court. Appellate courts generally will not consider an allegation of ineffective assistance of counsel raised for the first time on appeal. The Kansas Supreme Court has explained:

> "'[G]enerally, the factual aspects of a claim of ineffective assistance of counsel require
> that the matter be resolved through a K.S.A. 60-1507 motion or through a request to
> remand the issue to the district court for an evidentiary hearing under *State v. Van*

*Cleave*, 239 Kan. 117, 119-21, 716 P.2d 580 (1986). [Citation omitted.]'" *State v. Salary*, 309 Kan. 479, 483, 437 P.3d 953 (2019).

Importantly, the *Salary* court reminds that we may consider a claim of ineffective assistance of counsel for the first time on appeal "only when there are no factual issues and the two-prong ineffective assistance of counsel test can be applied as a matter of law based upon the appellate record." 309 Kan. at 483-84.

Here, a *Van Cleave* hearing—an evidentiary hearing on a defendant's ineffective assistance of counsel claim—would have likely helped evaluate McLaughlin's assertion that his counsel was ineffective. McLaughlin, however, did not ask us to remand his case for a *Van Cleave* hearing. Instead, McLaughlin demands that we vacate his convictions.

Our Kansas courts have established that if an appellant's claim of ineffective assistance of counsel cannot be resolved on the record, the appellate court is not obligated to sua sponte remand for a *Van Cleave* hearing when it has not been requested by the appellant. See, e.g., *Mundy v. State*, 307 Kan. 280, 299-300, 408 P.3d 965 (2018). Further, if an appellant does not request to remand the case for a *Van Cleave* hearing, courts have refrained from ordering a hearing sua sponte. See *State v. Dull*, 298 Kan. 832, 840, 317 P.3d 104 (2014) ("Given his appellate counsel's apparently deliberate decision not to seek a *Van Cleave* remand, we will not order one *sua sponte*."). As such, McLaughlin's claim of ineffective assistance of counsel must fail.

In *Mundy*, the defendant raised an ineffectiveness of counsel claim for the first time on appeal. The *Mundy* court declined to remand the case for a *Van Cleave* hearing that was not requested by the appellant. Without the ability to decide Mundy's ineffective assistance claim from the record and because remand was found to be inappropriate, the *Mundy* court "decline[d] to reach the issue because it was raised for the first time on

23

appeal, it cannot be resolved from the record, and Mundy did not request a *Van Cleave* hearing." 307 Kan. at 306.

Likewise, we too do not have a record that resolves whether McLaughlin's trial counsel was ineffective, nor will we sua sponte order a remand for an unrequested *Van Cleave* hearing. Because we cannot resolve McLaughlin's claim of ineffective assistance of counsel from the record and remand is not appropriate, we also will not consider this issue any further. As *Mundy* instructs, we too decline to reach this issue, and this issue is accordingly dismissed.

IV.     WE DECLINE TO REVIEW MCLAUGHLIN'S CLAIM BASED ON AN AFFIDAVIT FILED AFTER MCLAUGHLIN FILED HIS NOTICE OF APPEAL

On June 4, 2021, McLaughlin filed a notice of appeal. The appeal was docketed on August 3, 2021. On May 19, 2022, McLaughlin filed an affidavit in the district court attesting that his defense counsel refused to call him as a witness despite his desire to testify on his own behalf.

On appeal, McLaughlin now argues that his defense counsel was ineffective in denying him the opportunity to testify in his own defense. For support, he refers to the May 2022 affidavit. As noted above, this affidavit was filed after the district court case had concluded and McLaughlin had filed his notice of appeal. Thus, his argument is being made for the first time on appeal.

The State's response is similar to its response to the issue beforehand: We should decline to review an issue that requires an evidentiary hearing (as we are not a fact-finding court) and notes that McLaughlin did not request a *Van Cleave* hearing on remand. The State also challenges McLaughlin's affidavit, contending that it is not enough for relief, the State is not willing to concede the issue's validity unless proven at

an evidentiary hearing, and that defense counsel should be given the chance to "defend himself against the allegations." Finally, the State argues that the facts are disputed.

Moreover, the State challenges whether we should consider the affidavit because it was filed with the district court after the appeal was docketed. As a result, the district court would not have jurisdiction to consider this issue. McLaughlin also fails to explain why we can consider the affidavit that was not part of the original record or considered by the district court.

We agree with the State that we cannot consider McLaughlin's late-filed affidavit, which was never part of the original record on appeal. Under Supreme Court Rule 3.01(a)(1) (2024 Kan. S. Ct. R. at 19), the record on appeal must include only the "original" documents from the case. This affidavit was never one of the original documents. Therefore, because the affidavit is not an original document under Rule 3.01(a)(1), the affidavit cannot be considered as part of the record on appeal. Without the affidavit, we find that McLaughlin's last argument is not supported by the record.

Even if we were able to consider the affidavit, as noted in Issue III, we do not have a record that resolves whether McLaughlin's trial counsel was ineffective, nor will we sua sponte order a remand for an unrequested *Van Cleave* hearing. See *Hilyard*, 316 Kan. at 340 (refusing to sua sponte order *Van Cleave* hearing). McLaughlin is again asking us to make factual findings about his defense counsel but has not requested a *Van Cleave* evidentiary hearing. Following *Hilyard*, we decline to review the issue.

Affirmed.